# HARRISBURG BUREAU OF POLICE



## CRIMINAL INVESTIGATION DIVISION

## STANDARD OPERATIONAL MANUAL

### 2014

Eric Papenfuse

MAYOR

Thomas C. Carter

CHIEF OF POLICE

# INDEX

**CHAPTER #1   CRIMINAL INVESTIGATION DIVISION**                    **PAGE**

I     Organization                                                      1

    1.  Purpose                                                      1

    2.  Function                                                     1

    3.  Division Composition                                         2

    4.  Personnel                                                    4

II    Policy and Procedures to be used in Criminal Investigations       4

    1.  Policy                                                       4

    2.  Case Screening                                               4

    3.  Case Status Notification                                     6

    4.  Case File Maintenance                                        6

    5.  Purge of Files                                               7

    6.  Accessibility                                                7

    7.  Information Development                                      7

III   Intelligence Activities                                          9

    1.  Purpose                                                      9

    2.  Policy                                                       9

    3.  Procedures                                                   9

    4.  Records & Information                                        11

    5.  Purging of Records                                           12

IV    Use of Informants                                                12

    1.  General                                                      12

    2.  Specifics                                                    13

# INDEX

|  |  | PAGE |
|---|---|---|
| V | Interviews and Interrogations | 15 |
| | 1. Field Interviews | 15 |
| | 2. Victim/Witness Interviews | 15 |
| | 3. Interrogation of Suspects | 15 |
| | 4. Collection Preservation and Use of Physical Evidence | 16 |
| | 5. Surveillance | 17 |
| VI | Accountability for Conducting Preliminary and Follow-Up Investigations | 17 |
| VII | Preliminary Investigations | 18 |
| | 1. Definitions | 18 |
| | 2. Policy | 18 |
| | 3. Procedures | 18 |
| VIII | Follow-Up Investigations | 21 |
| | 1. Definition | 21 |
| | 2. Policy | 21 |
| | 3. Functions | 22 |
| IX | Managing Criminal Investigations (M.C.I) | 23 |
| **CHAPTER #2** | **C.I.D. PROCEDURES** | **27** |
| I | Policy | 27 |
| | 1. Follow-Up Investigation Criteria | 27 |
| | 2. Types of Crimes Requiring Follow-Up Investigation | 27 |
| | 3. Guidelines for Follow-Up Investigation | 28 |
| | 4. Detectives Functions – Additional Information | 28 |
| | 5. Crime Scenes, Neighborhood Contacts, Modus Operandi | 29 |
| | 6. Complainant – Second Contact | 29 |

# INDEX

PAGE

7.  On-Call Detectives Schedule 29

8.  Platoon Roll Call Attendance 29

II    Truth Verification Test Applications 30

1.  Responsibility 30

2.  Policy 30

3.  Guidelines 30

4.  Procedures 31

III    Background Investigations (Other than Pre-Employment) 31

CHAPTER #3    ORGANIZED CRIME AND VICE CONTROL UNIT 33

I    Policy 33

II    Responsibility 33

III    Goals and Objectives 34

IV    Receiving and Processing Complaints 34

V    Maintaining Security of Investigations 35

VI    Use and Control of Informants 35

VII    Receiving and Disseminating Information 36

VIII    Confidential Fund and Accounting Systems 37

IX    Surveillance and Undercover Equipment 38

X    Inter-Bureau Coordination 38

XI    Intra-Bureau Coordination 38

XII    Surveillance Operations 38

XIII    Raids 40

XIV    Status Reports 41

# INDEX

|  |  | PAGE |
|---|---|---|
| **CHAPTER #4** | **JUVENILE OFFENDER SECTION** | **42** |
| I | Interviews | 42 |
| II | Coercive Action Cases | 42 |
| III | Non-Coercive Cases, E.G. Truants, Runaway Victim, Witness | 46 |
| IV | Identification | 47 |
| V | Line-Ups and Confrontations | 47 |
| VI | Search of Juveniles | 49 |
| VII | Search of Premises | 49 |
| VIII | Police Juvenile Contacts at School | 49 |
| IX | Procedure | 49 |
| X | Transportation | 51 |
| XI | Custody | 51 |
| XII | Violations of Probation and Parole | 52 |
| XIII | Use of Force | 52 |
| XIV | Detention of Juveniles | 52 |
| XV | Targeted Crimes | 53 |
| XVI | Police Disposition of Juveniles | 55 |
| XVII | Guidelines for Referral to the Probation Office | 56 |
| XVIII | Types of Problems and What to Do | 57 |
| XIX | Missing and Runaway Children | 58 |
| XX | Special Consideration | 59 |
| XXI | Police Records of Juveniles | 59 |
| XXII | News Releases Involving Juveniles | 60 |

**INDEX**

**PAGE**

| | | |
|---|---|---|
| XXIII | Investigative Procedures and Guidelines | 60 |
| XXIV | Investigative Reporting System Outline | 61 |
| XXV | Solvability Factors | 61 |
| XXVI | Issuing Citations to Juvenile Offenders | 69 |
| XXVII | Review of Juvenile Programs, Projects and Activities | 69 |
| XXVIII | Juvenile Programs, Projects and Activities | 70 |
| XXIX | Diversion Project for Youths | 71 |
| XXX | Juvenile Offender Section Bi-Weekly Section Meetings | 72 |
| XXXI | Social Service Agency Listings | 73 |

# CHAPTER 1
## CRIMINAL INVESTIGATION DIVISION

I   ORGANIZATION

1.   PURPOSE

   A.   Acknowledging the need and desirability for continued, detailed and specialized investigations into certain criminal incidents, the Harrisburg Police Bureau hereby officially establishes a Criminal Investigation Division. hereafter referred to as the C.I.D.

   B.   The purpose of the C.I.D. is to satisfactorily resolve certain criminal incidents that escape resolution by the Uniformed Patrol Division. by assigning certain police officers of various ranks, the responsibility of follow-up and continuing investigations.

   C.   These follow-up investigations shall be conducted in the most expeditious, efficient and effective manner possible. Police Officers assigned the task of follow-up investigations shall be guided by the Rules and Regulations of the Bureau; Rules of Evidence; Rules of Criminal Procedure; General Order 08-13, (Responsibilities at Crime Scenes) and others, as applicable.

2.   FUNCTION

   The C.I.D. shall :

   A.   Investigate, identify and apprehend juvenile and adult offenders who have eluded arrest by the Uniformed Patrol Division

   B.   Act as a support element to the Uniformed Patrol Division

   C.   Recover stolen property.

   D.   Investigate, identify and apprehend perpetrators of Child Abuse

   E.   Investigate, identify, and apprehend persons involved in illegal vice and drug activity.

   F.   Investigate, identify and apprehend persons identified as Habitual Offenders

   G.   Investigate, identify and apprehend persons involved in homicides and other questionable deaths

   H.   Investigate shootings involving police officers. These investigations may coincide with concurrent investigations by outside agencies.

   I.   Investigate, identify and locate missing persons

   J.   Investigate, identify and apprehend persons involved in sexual offenses

Page #2
Criminal Investigation Division

    K.     Investigate, identify and apprehend persons involved in robbery and aggravated assaults.

    L.     Investigate, and identify those juveniles involved in "Status" offenses.

    M.    Provide truth verification testing.

    N.    Establish and coordinate "Special" operations to combat unique crime trends or surges in criminal activity.

    O.    Investigate, identify and apprehend persons involved in Burglary, Theft, Auto Theft, and other criminal activity as assigned by a section supervisor.

## 3.   DIVISION COMPOSITION

    A.    The C.I.D. is composed of the following sections and units:

       (1)    Adult Offenders Section

           a.    Responsible for investigation of all murders and other crimes committed by persons 18 years of age or older, except those cases assigned to specialty units.

       (2)    Juvenile Offender Section

           a.    Responsible for the investigation of incidents wherein the perpetrator is under 18 years of age, except those incidents assigned to specialty units.

       (3)    Special Operations Unit

           a.    Responds to incidents of problematic "crime surges" where a trend is identified either by geographic area or type of crime.  Unit also investigates all robberies.

       (4)    Auto Theft Unit

           a.    Responsible for investigating incidents of auto theft and theft from autos where juveniles or adults are suspects.

       (5)    Arson Unit

           a.    Responsible for investigation of all arson incidents.

Page #3
Criminal Investigation Division

(6)     Forensics Unit

   a.     Forensics acts as a support unit by processing major crime scenes
          for physical evidence and doing fingerprint comparisons.  The unit
          is also responsible for the operation of the Bureau's Photo Lab and
          acts as liaison with the PA State Police Crime Lab and the
          Dauphin County Coroner's Office.

(7)     Habitual Offender Unit (H.O.U.)

   a.     Responsible for the review of all persons arrested by the Bureau to
          determine if the arrestee meets the criteria to be considered a
          habitual offender.  If the arrestee qualifies for this program,
          detectives in this Unit, in concert with the office of the Dauphin
          County District Attorney, seek to ensure that the arrestee receives
          The maximum bail, sentence, and fine allowable by law.

(8)     Organized Crime and Vice Control Unit (O.C.V.C.U.)

   a.     Responsible for the enforcement of drug laws and vice laws as
          they relate to organized crime, gambling, prostitution, and liquor
          law violations.

(9)     Child Abuse Unit (C.A.U.)

   a.     Responsible for the enforcement of incidents as they relate to the
          physical or sexual abuse of children under eighteen (18) years of age.

   b.     Dauphin County Social Services for Children and Youth Form-
          AGENCY REFERRALS shall be utilized.

(10)    Truth Verification Unit

   a.     Responsible for administering truth verification examinations to
          persons suspected of committing a crime, witnesses and persons
          applying for employment as police/fire fighters.

(11)    Intelligence Component

   a.     The Intelligence Component will record, maintain and disseminate
          information concerning individuals and/or organizations involved
          in activities connected with Organized Crime, Subversive
          Activities, Vice Terrorism, Civil Disorders, and Motorcycle Gangs.

Page #4
Criminal Investigation Division

### 4.     PERSONNEL

A.    C.I.D. shall be commanded  by a Captain of Police.  This Captain  shall be responsible for the management  and control  of all sections  and units  in the C.I.D. This Captain  shall report  to the Chief of Police

B.    C.I.D. shall have a Lieutenant of Police assigned  who will be the Commander  of the various  sections  and units.  The Lieutenant  will be responsible  for the daily activity of the sections  and units in the C.I.D.  except Vice.  The Lieutenant  will report  to the Captain  of C.I.D.

C.    A Police supervisor  shall be assigned  to command  the Vice and Organized Crime Unit. This supervisor  will be responsible  for the daily activity  and supervision  of Vice and Organized Crime Unit  personnel  This supervisor  shall report  to the Captain  of C.LD.

D.    Within the C.I.D.,  there will be sufficient  Sergeants  of Police, responsible  for the daily supervision  of section/unit  personnel.  The Sergeants shall be assigned  specific  responsibilities  as determined  by the Captain  and Lieutenant. These  Sergeants  shall report  to the Lieutenant  of C.I.D.

E.    The number of Investigators/Detectives/Patrol Officers assigned to the C.I.D shall be determined by the senior command staff of the Bureau on an as needed basis.  These officers shall conduct follow-up investigations as assigned.  These officers shall report to the Sergeants of  C.I.D.

## II   POLICY AND PROCEDURES TO BE USED IN CRIMINAL INVESTIGATIONS

### 1.    Policy

A.   To identify those common elements of all investigations and to establish basic Procedures to be used in criminal investigations.

B.   This procedure applies to the criminal investigation process as performed by Both uniformed officers and officers assigned to specific investigative units or sections.  Specific units may have additional procedures that are specialized and are particular to that unit.  Officers transferred to or working with various units should consult unit supervisors for specific unit procedures.

### 2.    Case Screening

A.   It is the policy of the Bureau to use available manpower in the most efficient and  effective manner possible in order to realize maximum results regarding criminal investigations.

Page #5
Criminal Investigation Division

B.  The Administrative components of the C.I.D., upon receipt of preliminary
Investigation. (I.C.R.) reports shall review all such reports to determine whether
a follow-up investigation should be made.  This determination shall be based
upon the availability of the following solvability factors:

(1)   Was there a witness to the crime

(2)   Existence of a significant M.O.

(3)   Identification of suspect

(4)   Suspect name

(5)   Suspect good description

(6)   Knowledge of suspect location

(7)   Presence of a description which identifies the vehicle used by the suspect

(8)   A limited opportunity to commit the crime

(9)   A limited number of persons as possible suspects

(10)  Belief that the crime can be solved with reasonable investigative effort

(11)  Belief that a crime can be solved with publicity

(12)  Presence of significant physical evidence

(13)  Property with identifiable characteristics, marks or numbers which can be
traced

(14)  Positive results from a crime scene evidence search

C.  In addition, National surveys indicate that over 90% of all cases cleared are
cleared as a result of information developed during the initial investigation.
Thereafter, additional research indicates that a basic tool in any investigative
system is reliance on neighborhood contacts or canvass of neighbors,
merchants and others in the vicinity of the crime.  It is estimated that the
systematic use of neighborhood canvassing within a short time of the
commission of a crime (such as the following morning) results in positive
information of investigative value in 20%  of cases.  The neighborhood contact
procedure also has preventative value and leads to better relations between
police and the community.

 Page #6
Criminal Investigation Division

   D.    In the event of assignment, investigators receiving such assignment shall make a
          timely investigation by:

      (1)  Making contact with the victim within ten days of receiving each case

      (2)  Briefing should be within two business days and forensics should be briefed
           within five business days.  An e-mail detailing this shall be forwarded to all
           supervisors and the assigned D.A for major investigations.

      (3)  A narrative is to be created within 10 days.

## 3.    Case Status Notification

   A.    C.I.D. detectives shall provide victims of crimes with official information
         regarding the status of the investigation into their complaints.  This shall be
         accomplished by verbal notification to the victim and a written notation in the
         investigative report.

   B.    Detectives shall provide their immediate supervisors within 60 days
         of the date of assignment, a completed, Supplemental Report outlining the
         status of the investigation.

      (1)  Cleared by arrest

      (2)  Administratively Cleared

      (3)  Exceptionally Cleared (for reasons beyond the control of the police)

      (4)  Open (this category may only be used with the approval and consent of
           The Captain of C.I.D)

      (5)  At the completion of an investigation, the  end of the narrative shall
           read:  "End/Badge #" along with the status.

   C.    If a case requires more time, the assigned detective shall request and
         Extension to the immediate supervisor

## 4.    Case File Maintenance

   A.    Retention

      (1)  Detectives shall maintain a case file on all assignments given them.
           These files shall contain:

         a.  Copies of the I.C.R

         b.  Copies of Supplemental Reports

      c.  Copies of Statements

Page #7
Criminal Investigation Division

      d.  Copies of results of all examinations

      e.  Copies of other reports and records needed for investigative purposes

NOTE: Under no circumstances are original reports/documents maintained by the detective.  All originals will be stored in the Central Records Unit.

## 5.    Purge of Files

A.    Detectives case files shall be purged on a schedule which correlates with the statute of limitations for the crime that is being investigated.  Homicides shall be maintained indefinitely.

## 6.    Accessibility

A.    Access to detective's files shall be limited to:

    (1)    Police personnel

    (2)    District Attorney Personnel

B.    Requests for access to detective's files by persons not authorized above, shall be referred to the Captain of C.I.D.

C.    In the event that an officer is transferred out of an investigative section or retires from police service, the investigative files shall be disposed of either by reassigning the unclosed cases or destroying the files that are not needed.  In any event, it is the responsibility of the C.I.D. Commander to arrange disposition.

## 7.    Information Development

A.    The development of pertinent case information begins when the call for the police is received, and continues until the case is cleared or suspended. Obtaining and recording even apparently minor information is often crucial to the successful conclusion of the case.

B.    Sources of Bureau information that are valuable and will be utilized as Needed include:

    (1)    Bureau Master File

    (2)      Arrest Records

Page #8
Criminal Investigation Division

    (3)      Traffic Accident Reports

    (4)      Photo and Fingerprint Unit

    (5)      Pawn Shop Records

    (6)      Juvenile Offenders Section

    (7)      Vice Control Unit Files

    (8)      Licensing Office Records

    (9)      Cross Directory

    (10)     Informant File

C.     Outside agency information that can be valuable in an investigation and should be utilized when appropriate, including:

    (1)      CLEAN/NCIC Criminal History Records Information (CI-IRJ)

    (2)      DMV Records

    (3)      Probation and Parole Records

    (4)      Local and Federal Agencies Records

    (5)      Court Records

    (6)      Tax Records

    (7)      Licensing Unit's Records

    (8)      Welfare and Social Service Agency Records

    (9)      Board of Education Records

    (10)     Real Estate Records

    (11)     Post Office Records

D.     Private organizations and agencies can also provide information valuable to investigations.  Court orders may be necessary to obtain certain records.  Such sources of information include:

    (1)      Utility Companies

Page #9
Criminal Investigation Division

     (2)    Telephone Companies

     (3)    Banks and Credit Agencies

     (4)    Unions and professional agencies

     (5)    Insurance Companies

     (6)    Neighbors, social contacts, and business associates

## III   INTELLIGENCE ACTIVITIES

### 1.   PURPOSE

A.   The Intelligence component will record, maintain and disseminate information concerning individuals and/or organizations involved in activities connected with:

     (1)    Crime

     (2)    Subversive Activities

     (3)    Vice Activities

     (4)    Terrorism

     (5)    Civil Disorders

     (6)    Gang Activities

### 2.   POLICY

A.   Collection of intelligence information is the responsibility of all police personnel, both sworn and non-sworn.  The Intelligence and Information report and the Prisoner Debriefing Form are the vehicles to convey information to the intelligence component

B.   The Commander of the Vice Unit will be responsible for maintain all intelligence information

### 3.   PROCEDURES

A.   Use of Informants

     (1)    The use of informants is encouraged and should be consistent with policy outlined in the Criminal Investigation Division Standard Operations Manual Section, dealing with "use of Informants".

Page #10
Criminal Investigation Division

B.      Information

(1)     Information gathered or collected will be only that which deals with criminal conduct or activities that present a threat to the community. information received from possibly "unreliable" sources should be carefully screened and scrutinized before including into the system.  The Intelligence Officer will be responsible to carefully review information to ensure it meets the above criteria for inclusion in the system.

(2)     Types of quality of information that may be included in the system are

a.      Illegal Sale and Distribution of Controlled Substances

b.      Illegal prostitution and pornography

c.      Illegal gambling operations

d.      Illegal sale and distribution of liquor

e.      Loan-sharking

f.      Corruption

g.      Extortion and/or bribery

h.      Theft/burglary rings

i.      Fencing Operations

j.      Distribution of illegal firearms

k.      Organized Crime Activities

l.      Group or Gang Activities that present a threat to community, i.e., Skinheads, KKK, Outlaw Motorcycle Gangs, etc.

(3)     Recently arrested suspects are an excellent source of intelligence Information and police personnel are encouraged to interview these Subjects utilizing the Prisoner Debriefing Form

C.      Confidential Fund

(1)     A Confidential Fund will be maintained by the Chief of Police and Utilized by the Organized Crime and Vice Control Unit as well as the Intelligence component, as outlined in the Criminal Investigation Division, Standard Operations Manual, Section, "criteria for the Use of Informants Funds", and General Order #02-23.

Page #11
Criminal Investigation Division

     D.     Equipment

          (1)     Specialized equipment such as audio-visual monitoring equipment (DVD's), and night vision equipment is available

          (2)     Electronic Surveillance Equipment such as telephone recording devices, body wires, digital number recorders and body recorders are available through proper application to the Dauphin County District Attorney's Office.  The procedure for use, acquisition and maintenance of the equipment is governed under guidelines established by the Dauphin County District Attorney's Office and the PA State Statute.

          (3)     Surveillance vehicles will be available to the Intelligence component as needed and will be supplied by other Bureau Sections and Units.

          (4)     Any other equipment necessary for support of the intelligence function will be made available through Police Bureau resources.

     E.     Investigative Techniques

          (1)     Surveillance and undercover operations are important techniques for collecting intelligence information.  These operations will be conducted by the Intelligence Officer or his designee.  Guidelines for surveillance and undercover operations will be in accordance with General Order #02-23, Organized Crime & Vice Control Operations, Section XII, subsection 1 through 17.

     F.     Joint Investigations

          (1)     Joint investigations provide additional sources and resources and should be consistent with policy in the Criminal Investigation Division Standard Operations Manual.

## 4.    RECORDS AND INFORMATION

     A.     Intelligence records will be under the control of the intelligence component

     B.     Security for intelligence records will be provided for, in a locked file, within the locked office of the Intelligence Officer.

     C.     Dissemination of intelligence information will be to Criminal Justice Agencies only on a need-to-know basis.      Information should be provided to sections and units within the Bureau to ensure adequate feedback, and nurture future intelligence gathering and input.

Page #12
Criminal Investigation Division

D.      Liaison with Federal, State and other Criminal Justice Agencies is vested with
The Intelligence Officer for purposes of exchanging intelligence information and
Enhancing the preparedness of agencies with similar responsibilities.

E.      The Harrisburg Bureau of Police will maintain membership in the Mid-Atlantic
Great Lakes Organized Crime Law Enforcement Network (MAGLOCLEN)
The primary function of MAGLOCLEN is to maintain a centralized data bank
on inter-state and intra-state organized crime and criminals.  The
MAGLOCLEN information system is a pointer index and the Harrisburg
Bureau of Police is required to submit entry cards on criminals in their files.
MAGLOCLEN then logs and computerizes the information and other members
make inquiries into the system and, where applicable, are put in touch with the
submitting member.  Through the network of nationwide regional intelligence
systems, the project can put members in touch with thousands of other law
enforcement agencies.  The Intelligence Officer is designated as the primary
representative and contact person with MAGLOCLEN.

## 5.      PURGING OF RECORDS

A.      The records of the Intelligence Component will be audited on an annual basis
by the Intelligence Officer.  Any information that has not been updated in a 3-
year period will be purged from the system.

# IV      USE OF INFORMANTS

## 1.      General

All officers are responsible for developing sources of information that will assist them
in their follow-up investigations.  Information obtained that relates to specific crimes
being investigated by other officers or detectives should be brought to the attention
of those officers

A.      Information is available from many sources, e.g., concerned citizens who wish
to remain anonymous, criminals who have first-hand knowledge of illegal
activity, and relatives or friends of those involved in crime should be kept in
mind when conducting investigations and related interviews.  Officers are
cautioned to determine the motivation of individuals who provide information
in order to help evaluate that information.

B.      Informant information should be reviewed with a shift supervisor and the
District Attorney, prior to being used.  When informants are used to contribute
to the solution of a case, it should be noted in the case supplemental reports.

Page #13
Criminal Investigation Division

    C.    Requests for money to pay informants will be handled on a case by case basis. The officer who receives the information should review the facts of the case with his supervisor.  If money is to be paid, it will be dispersed thru the Criminal Investigation Division using their record keeping and accounting procedures.

    D.    Confidentiality must be maintained and officers will refrain from discussing informants, information provided, or cases they are involved in when inappropriate.

## 2.    Specifics

    A.    The Bureau encourages the use of informants and hereby establishes two special investigation funds.  One fund will be administered by the Chief of police for information that will be utilized in the investigation of a serious crime.  The other fund will be administered by the Commander of the Organized Crime and Vice Control Unit for use in drug-related investigations.

    B.    It is also realized that it is necessary to preserve the confidential relationship between informants and investigators, therefore, the following is the policy and procedure to be followed when using informants.

    (1)    The Commander of the Organized Crime and Vice Control shall maintain:

    a.    Master file by coded number on informants

    b.    This master file shall contain:

    i.    Background R/S/A

    ii.    Record of transactions

    iii.    How to locate

    iv.    Investigation

    v.    Record of information provided that resulted in arrests including numbers

    vi.    Will informant testify

    vii.    Will informant wear equipment

Page #14
Criminal Investigation Division

C. The patrol officer or Detective will be required to complete a voucher for each payment, listing the date, amount, and code name/number of informant. The Detective will also provide the Captain of C.I.D. with a report regarding the results of the use of the informants.

D. Only the Chief of Police, Captain of C.I.D. and the Commander of the Organized Crime and Vice Control Unit will have access to the master file, money, voucher forms,   regarding informants.

E. To preserve the confidential nature of informants, each patrol officer or detective is required to keep the coding information on his/her informant in a separate and secure location which is accessible only to him/herself

F. Juvenile informants require special consideration and each will be evaluated individually by the Section Commander, Captain of C.I.D., Chief of Police and the Detective.

G. Patrol officers and Detectives are reminded that generally, informants are of questionable character and before commitment is made to supply them with funds, every reasonable effort should be made to determine their credibility, motive and dependability.  The final approval for disbursement of funds rests with the Commanding Officer of C.I.D.

H. Criteria for the Use of Informant Funds

(1) Only the Chief of Police and the Commander of the Organized Crime and Vice Control Unit will have access to informant funds.

(2) Payment will be made only for information on Homicide, Rape, Robbery, Aggravated Assault, Burglary, Theft, Arson, Drug-related offenses and offenses that are of a special public interest.

(3) Payment will not exceed $100.00 per investigation without prior approval of the Chief of Police.  If the investigation is of a very serious nature and the informant requests payment over the $100.00 limit, other avenues of revenue will be explored.

(a) District Attorney

(b) Crime Stoppers

(c) Other law agencies

(d) Victim's family

Page #15
Criminal Investigation Division

      I.       Investigators are encouraged to exhaust all possibilities of gaining information Without suggestion of mention of payment.

      J.       Accounting of Informant Funds

          (1)     The Chief of Police shall be responsible for the proper accounting of general informant funds and shall cause a semi-annual audit of those funds.  The Commander of the Organized Crime and Vice Unit shall be responsible for the proper accounting of the Vice informant fund and will ensure that a quarterly audit is conducted on those funds.

      K.      Organized Crime and Vice Control

          (1)     Use of informants by the Organized Crime and Vice Control Unit will be Governed by policy designed specifically for that unit.

# V   INTERVIEWS AND INTERROGATIONS

1      The effective use of field interviews, interviews of victims and witnesses, and Interrogations of suspects are often crucial in solving many types of crimes.

      A.      Field Interviews- are a productive tool and source of information for the Police Bureau.  They should be used only in the pursuit of legitimate goals of the Bureau and not to harass any segment of the community.  When used properly they can discourage criminal activity, identify suspects and add intelligence information to the files of known criminals.

      B.      Field interviews should be conducted and documented with reports when officers come in contact with people whose suspicious behavior is able to be articulable.

2.     Victim/Witness Interviews

      A.      Detailed notes and/or recordings should be made for future reference giving time, date, location, officers present, etc.

      B.      The trauma/stress to which the victim or witness has been subjected should be considered and the interview conducted in such a manner as to reduce stress and minimize further problems.

      C.      The age, physical limitations, and credibility of witnesses should be considered.

Page #16
Criminal Investigation Division

3.    Interrogation of Suspects

A.    In the interrogation of suspects, officers should consider these important points:

(1)    Interrogations to obtain investigative leads can be very useful but all Constitutional precautions must be taken and recorded

(2)    Detailed notes and/or recordings should be made for future reference and court use giving time, date, location, officers present, waiver of rights, time interrogation ended, etc.

(3)    Statements obtained during an interrogation must not be based on Coercion, promises, delays in arraignment, or deprivation of counsel

(4)    In order to use a statement in court, a suspect should be advised of his/her "Miranda" constitutional rights, and the officer must be able to demonstrate that the suspect understood those rights and made a knowing and intelligent waiver of those rights.

(5)    Juvenile victims, witnesses, and suspects must be given the same constitutional protection as adults. The following additional safeguards should be followed:

a.    Parents or guardians will be notified whenever a juvenile is interrogated, taken into custody, or charged. Private time to converse with parents, guardians or other interested persons must be offered and provided before interviewing.

b.    The number of officers engaged in the interrogation and its duration will be kept to a minimum

c.    A brief explanation of the Juvenile Justice System and Bureau procedures will be provided.

d.    Officers should remember that by using innovative, yet proper methods, much valuable evidence can be obtained from victims, witnesses, and suspects. A flexible and effective interview and interrogation technique can obtain valuable evidence that might otherwise be lost.

4.    Collection, Preservation, and Use of Physical Evidence

A.    Officers must realize that physical evidence is of major importance in all cases, particularly those without witnesses. The successful prosecution of a case often hinges on the equality of the physical evidence collected and preserved.

Page #17
Criminal Investigation Division

(1)     All officers are responsible for the preservation of evidence and For maintaining and documenting the chain of custody of all evidence that is in their custody.

(2)     Most evidence collection will be handled by Bureau personnel who are trained in evidence processing and are guided by a Bureau Standard Operating Procedure (S.O.P) on evidence collection.

(3)     All physical evidence will be collected and handled in accordance With General Order #08-13 and General Order #07-72.

5.     Surveillance

A.     The secretive observation of a person, place, or vehicle is a basic police technique that can be used by all Bureau Units.  Surveillance can be used effectively to gather evidence of illegal activity or in the case of stakeouts to apprehend criminals after a pattern of their criminal activity has been identified.

(1)     Specific units of the Bureau, such as the Organized Crime and Vice Control Unit, use surveillance routinely and maintain S.O.P's on the subject.  The expertise and resources of those units should be utilized by other units as crime trends and manpower permits.

(2)     All officers should be encouraged to use surveillance of known trouble spots and known violators as part of their efforts to suppress crime and arrest suspects in their areas.

(3)     For specific assistance in surveillance procedures and techniques, officers should contact supervisors of the Vice Control Unit.

# VI   ACCOUNTABILITY FOR CONDUCTING PRELIMINARY AND FOLLOW UP INVESTIGATIONS

**1.**     The uniformed Patrol Officer is responsible for the prevention of crime on his/her district, and while the Patrol Officer is not held entirely responsible for its clearance, they are urged to do all in their power to arrest the perpetrator and to recover stolen property.

2.     Supervising officers should urge the Patrol Officer to continue their efforts to apprehend criminals who have operated within their district on the grounds that the effectiveness of patrol, on a district as well as throughout the City is measured in part by the crime rate.  The arrest of the criminally active will tend to reduce the crime rate, thus simplifying the patrol task of preventing crime.

3.     Generally, the preliminary investigation should be accomplished by the uniformed Patrol Officer, with assistance when necessary, supplied by investigators from the C.I.D.

Page #18
Criminal Investigation Division

4.      Offenses not cleared at the Patrol level will be reviewed by the C.I.D. and if
        Appropriate, assigned for follow-up investigation.

5.      C.I.D. is to be notified of the following offenses in order that investigators may
        Respond as soon as possible:

        A.      Homicide (includes attempt)

        B.      Rape (includes attempt)

        C.      Robbery

        D.      Aggravated Assaults (Life Threatening Injury)

        E.      Burglary (resulting in <u>extensive</u> loss)

        F.      Theft (resulting in <u>extensive</u> loss)

## VII    PRELIMINARY INVESTIGATIONS

### 1.    Definition

        A.      The preliminary investigation begins when the first police unit arrives at the
                scene or makes contact with the complainant or victim by telephone or other
                means, and continues until a postponement of the investigation or transfer of
                investigative responsibility may be made without jeopardizing the successful
                completion of the investigation.

### 2.    Policy

        A.      The reduction of crime through police action depends in large part on the
                success of the criminal investigation process, which should identify, cause an
                arrest and conviction of the perpetrator of crimes, and recover stolen property.

        B.      The preliminary investigation is a critical step in the overall criminal
                investigation process.  Often, the success or failure of the entire case hinges on
                the quality of this phase of an investigation.

### 3.    Procedures

        A.      Preliminary Investigation (Non-major Crimes)

                (1)      Officers having responsibility for the preliminary investigation should:

                        a.      Provide aid to the injured.

Page #19
Criminal Investigation Division

      b.      Protect the crime scene to ensure that evidence is not lost or contaminated.

      c.      Observe and record all conditions, events and remarks.

      d.      Determine if an offense has actually been committed and if so, the exact nature of the offense.

      e.      Determine the identity of the suspect or suspects and effect an arrest, if it can be accomplished either at the scene or through immediate pursuit.

      f.      Through the police radio dispatcher, furnish other field units with descriptions, method and direction of flight, and other relevant information concerning wanted persons or vehicles.

      g.      Obtain complete identification of all witnesses.

      h.      Determine what information is known by the victim and each witness.

      i.      Arrange for the collection of evidence and crime scene processing.

      j.      Determine in detail the exact circumstances of the offense.

      k.      Obtain written statements from victims and witnesses, and from suspects if such statements can be obtained legally.

      l.      Accurately and completely record all pertinent information in the appropriate report format in the METRO Reporting System.

      m.      Make appropriate NCIC/CLEAN entries, and inquiries, if applicable.

      n.      Brief the C.I.D. investigators who may assume the follow-up investigation as to the known facts of the case.

B. General Responsibilities

(1)     Except in those cases where the presence of a uniformed officer would obviously hinder a proper investigation, or specific expertise is required, the preliminary investigation shall be conducted by the uniformed patrol officer assigned to the call.

(2)     The assigned patrol officer shall initiate and complete as many of the activities listed above as are necessary.  The individual circumstances of the incident will determine how many of the activities are required.

(3)     The patrol officer assigned shall be responsible for initiating action to Inform other appropriate Bureau units that a serious crime or one Requiring immediate on-the-scene follow-up investigation exists.

(4)     Control over the preliminary investigation shall be maintained by the Uniformed Patrol Division unless a request is made by a patrol supervisor to a C.I.D. supervisor to assume that control, or vice versa. In the absence of a patrol supervisor, the patrol officer may make the Request directly.

(5)     Investigators from any division or section may respond to any crime, especially for categories of crimes in which they have primary responsibility for the follow-up investigation, to assist the Uniformed Patrol Division.  Any investigator in the vicinity of or available for an in progress call will respond to the scene and offer appropriate assistance.

(6)     The prescribed incident reports shall be completed in detail by the officer for review by his/her immediate supervisor.  A report shall be completed at the earliest possible time, consistent with workload demands, public safety concerns, and the convenience of the officer, investigator or supervisor.  Every attempt shall be made to complete the I.C.R. prior to the end of the officer's shift.

Officers shall enter reports in the METRO Field Reporting System and their immediate supervisors will review those reports prior to the end of the officer's tour of duty.  Any "external" case documents will be forwarded to Central Records.  Supervisors shall either approve the reports immediately if satisfactory, or approve after corrections are made.

NOTE:  There must be a police incident report for any case in which there has been a criminal arrest, other than summary offenses.

C.   Major Crime Scenes will be handled in accordance with General Order #08-13.

# III FOLLOW-UP INVESTIGATION

## 1.  Definition

A.  The follow-up investigation should be an extension of the activities of the preliminary investigation and not a repetition of it.  The purpose of the follow-up investigation in a non-criminal case is to gather additional information or to carry out actions which will lead to closure of the case.  In a criminal case, the purpose of the follow-up investigation is to gather additional evidence and information to prove the elements of a particular crime in order to effect an arrest and support prosecution of the perpetrator, and/or to recover stolen property.

B.  The role of the supervisor in this process is very important.  First, he/she must ensure proper utilization of manpower by:

(1)  Assigning for investigation, criminal cases that have the potential for closure.

(2)  Not assigning for investigation criminal cases that have little potential for closure.

(3)  Ensuring that personnel assigned to conduct each investigation have the skills, knowledge, and abilities required for that assignment.

(3)  Then, he/she must ensure mutual cooperation, understanding and exchange of information between all Bureau units.

## 2.  Policy

A.  The decision to assign a case for follow-up investigation, or to continue an investigation, is a management prerogative based in part on the following criteria:

(1)  The degree of seriousness  of the offense

(2)  The presence of absence of solvability factors, including:

a.  Can a suspect be named

b.  Can a suspect be identified

c.  Is there a witness to the crime

d.  Can a suspect vehicle be identified

e.  Was there significant evidence

Page #22
Criminal Investigation Division

  f.  Is there traceable property involved

  g.  Was there a minimum delay in reporting

 (3)  Investigative workload

 (4)  Agency and unit experience with similar cases

B. When it is determined that a case is to be assigned for follow-up investigation and the case has been docketed and assigned a tracking number, the assigned investigator will be responsible for that particular case until its conclusion or its reassignment.  This does not preclude the assignment of more than one person to assist in an investigation but ensures accountability by the principal investigatory detective.

## 3. Functions

A. Basic functions of the follow-up investigation in a non-criminal case includes:

 (1)  Interviewing complainants and witnesses

 (2)  Locating missing persons

 (3)  Determining if information or suspicious activity may/does relate to criminal activity

 (4)  Distributing information to the proper persons or agencies

 (5)  Locating lost property and returning same to owner

 (6)  Investigating deaths, overdoses, suicides and injuries to determine if a crime was committed

 (7)  Making necessary notifications, conducting necessary inspections, etc.

 (8)  Recording information obtained

Page #23
Criminal Investigation Division

B.  Basic functions of the follow-up  investigation in a criminal case include:

(1)    Reviewing and analyzing reports of preliminary investigations

(2)    Recording information obtained during follow-up investigation

(3)    Reviewing Bureau records for investigative leads

(4)    Seeking additional information (from uniformed officers, informants, contacts in community, other investigators/agencies, etc.)

(5)    Interviewing victims and witnesses

(6)    Interrogating suspects

(7)    Arranging for the dissemination of information as appropriate. (teletypes, roll call BOLO's, etc.)

(8)    Planning, organizing and conducting searches

(9)    Collecting physical evidence

(10)    Recovering stolen property

(11)    Arranging for the analysis and evaluation of evidence

(12)    Reviewing results from laboratory examinations

(13)    Identifying and apprehending the perpetrator

(14)    Checking for suspects

(15)    Determining if other crimes may have been committed by the suspect

(16)    Determining if suspect/perpetrator meets Career Criminal criteria

(17)    Consulting with the District Attorney's Office in preparing cases for court presentation and assisting in the prosecution thereof

(18)    Attendance to testify in court

(19)    Ensuring that victims are aware of help available from victim/witness

C.  The functions outlined in the above, will serve as a guideline, but are not Necessarily intended to be used in every follow-up investigation.

Page #24
Criminal Investigation Division

## IX    MANAGING CRIMINAL INVESTIGATIONS (M.C.I.)

1.    Every investigation consists of two equally important phases:

    A.    The physical investigation of the scene

    B.    The written report or I.C.R.

2.    The written report (I.C.R.) is an intricate part of the concept of Managing Criminal Investigations (M.C.I.)

3.    Managing Criminal Investigations is predicated on the use of thirteen (13) "solvability Factors".

    A.    Was there a witness to the crime

    B.    Existence of a significant method of operation (M.O.)

    C.    Identification of suspect

    D.    Suspects name or good description

    E.    Knowledge of suspect's location

    F.    Presence of description which identifies the vehicle used by the suspect

    G.    Limited opportunity to commit the crime

    H.    A limited number of persons as possible suspects

    I.    Belief that a crime can be solved with reasonable investigative effort

    J.    Belief that a crime can be solved with publicity

    K.    Presence of significant physical evidence

    L.    Property with identifiable characteristics, marks, or numbers which can be traced

    M.    Positive results from a crime scene search

Page #25
Criminal Investigation Division

4.      These thirteen solvability factors have been developed and are incorporated in the Bureau's Initial Crime Report form.  The conscientious use of these factors will result in the clearance of cases and the most efficient and effective use of Bureau resources.

5.      In order to most effectively make use of the aforementioned solvability factors, the investigating officer must exhaust all reasonable means of developing investigative leads.

6.      The following is a list of basic duties each officer is expected to pursue regarding the solvability factors:

    A.   To develop suspect information

        (1)      Interview the victim thoroughly

        (2)      Interview neighbors/persons who might have witnessed the crime

        (3)      Be aware of the criminal element in your area

        (4)      Develop informants and/or information sources

    B.   To develop suspect vehicle information

        (1)      Interview the victim

        (2)      Interview neighbors/persons in close proximity to the crime scene

        (3)      Record and submit appropriate reports regarding suspicious

                 Persons/vehicles

    C.   Physical evidence

        (1)      Implement General Order #08-13 "Responsibilities at Crime Scenes".

        (2)      Learn techniques of collecting prisoners evidence (Forensic Manual)

        (3)      Process the crime scenes that the Uniformed Patrol Division is responsible for.

Page #26
Criminal Investigation Division

    D.   Identifiable property

        (1)    Obtain the make, model number, serial numbers, and any other numerical Identifier

        (2)    Obtain a detailed description of the article

        (3)    Obtain any type of identifying marks such as burns, scratches, etc.

    E.   Method of Operation

        (1)    Point of entry/exit

        (2)    What was taken

        (3)    How was the crime committed

        (4)    What was said

        (5)    Were there any unique or odd actions, speech, times, descriptions, property stolen, etc.

        (6)    Record appropriate M.O. code number in designated portion of the Initial Crime Report

7.    With comprehensive information in the report, not only will the possibility of the crime being cleared be enhanced, either initially or with follow-up investigation, crime analysis efforts will be enhanced which will assist various patrol and investigative units in performing their assignments in an efficient and effective manner.

# CHAPTER 2
# C.I.D. PROCEDURES

## I.    POLICY

1.    C.I.D. Investigators will be responsible for follow-up investigations of crimes that
Have sufficient solvability factors as determined by M.C.I. guidelines.

2.    C.I.D. Investigators shall provide follow-up investigation, as needed, for the listed
Crimes and any other cases that require an in-depth investigation.

A.    Crimes Against Persons

(1)    Criminal Homicide

(2)    Murder

(3)    Voluntary/Involuntary Manslaughter

(4)    Serious Assaults

(5)    Kidnapping

(6)    Rape and other Sex Crimes

(7)    Robbery

B.    Crimes Against Property

(1)    Arson and other Property Destruction

(2)    Burglary and other Criminal Intrusions

(3)    Theft and Related Offenses

(4)    Forgery and Fraudulent Practices

(5)    Bribery and Corruption

(6)    Firearms and Other Dangerous Articles

Page #28
Criminal Investigation Division

3.      Guidelines for Follow-Up Investigations

   A.      Reports generated by Uniformed Patrol Division Personnel will be submitted
           at the end of each tour of duty.  These reports will then be reviewed by the
           various platoon supervisors on computer and approved when correct

   B.      CID Section Supervisors will review each report on the PF4 Assignment
           Screen and utilizing M.C.I guidelines to determine which cases are to be
           assigned.

       (1)      Cases to be assigned will be assigned to the investigator via the METRO
                (PF4) "Supervisor Assign Follow-Up Report" screen.  This will send an
                Email to the investigator informing him of the assignment.

       (2)      Assignment records will be maintained in the METRO System.

       (3)      Each open investigation requires a status report in 10 days, and the
                continuance of any investigation beyond 60 days requires command
                approval.

       (4)      After 60 days, cases must be disposed of in one of the following
                manners:

            a.      Arrests

            b.      Exceptionally Cleared

            c.      Unfounded

            d.      Administratively Closed

            e.      Warrant Issued

            f.      Open (Explanation for continuance beyond 60 days)

4.      Some basic functions outlined in the previously listed investigators check list need
        additional definition.

   A.      Crime Scene Search – General Order #13 outlines policy procedures and
           responsibilities at crime scenes.

   B.      Investigators are encouraged to place special emphasis on gathering and using
           physical evidence to compliment witness testimony, statements and
           confessions.

Page # 29
Criminal Investigation Division

5.      Physical Evidence is extremely reliable when properly gathered and maintained, it will also increase the probability of conviction.

   A.      Thorough examination of crime scenes for physical evidence is a must.

   B.      Neighborhood Contacts

      (1)      Canvassing of neighbors, merchants and others in the vicinity of a crime scene results in positive information of investigative value at least 20% of the time.

      (2)      This fact, along with preventive and community relations value, make Neighborhood canvassing a valuable tool.

   C.      Modus Operandi Search

      (1)      M.O. searches are available through the use of computer files within the Police Bureau and in many cases provide positive leads.

6.      Second Contact with Complainant

   A.      Before an investigation of any case is suspended, the assigned investigation will re-contact the complainant and witnesses to ascertain if there is any additional or new information and advise the concerned parties of the status of the case.

7.      "On-Call" Investigator's Schedule

   A.      The C.I.D. "On-Call" contact person is the C.I.D. Supervisor.  If an investigator is needed after normal working hours, the C.I.D. on call supervisor will determine who shall be re-called to duty.

   B.      Investigators who are re-called during a particular after hours period, will be required to respond to a crime scene to provide services as needed.

   C.      Investigators who are re-called to duty will be compensated per contractual agreement.

8.      Platoon Roll Call Attendance

   A.      Attendance at "Roll Call" is a means of enhancing relationships between the Uniformed Patrol Division and the Criminal Investigation Division.

      (1)      When practical, members of C.I.D. will attend the second and third platoon Roll Calls on a daily basis, to exchange crime information.

Page #30
Criminal Investigation Division

      (2)     When there is a major crime wave or a series of apparently connected events, Roll Call attendance for the purpose of information gathering and uniformed patrol assistance may require additional Roll Call attendance.

  B.    The Commander of C.I.D. or his designee shall hold daily roll call meetings to account for assigned personnel and discuss crime problems, trends, current investigations and strategies in the identification and apprehension of offenders.

## II   TRUTH VERIFICATION TEST APPLICATIONS

1.    The Polygraph Unit of the Harrisburg Police Bureau is responsible for the specialized examination of suspects, victims of crimes, witnesses, job applicants, internal screenings of a critical nature, and others who must rely on a polygraph to aid in verifying the truthfulness of their statements.

2.    Policy

  A.    Truth Verification Examinations are investigative tools <u>NOT</u> to be used in LIEU of a complete and thorough investigation.

      (1)     The officer-in-charge of the Polygraph Unit has overall responsibility for determining of a Polygraph Examination is to be administered.  He/she along with the Commander of C.I.D. will review all requests for examinations along with completed copies of the case to determine if there is sufficient cause to support an examination.  If so, a completed standard waiver and consent or release form must be signed by the examinee prior to testing.  Examinations must be voluntary.

      (2)     All Polygraphist Examiners must be certified as outlined in the job description for that position.

3.    Guidelines

  A.    Polygraph testing should be limited to no more than two (2) examinees per case. (Exceptions would be made for extremely serious cases).

  B.    In cases involving property loss, it suggested that the value of the property exceed $500.00 before a polygraph test is administered

  C.    Once Polygraph testing has been approved, it should be the responsibility of the case investigator to supply the examiner with a copy of the Initial Crime report and all supplementals at least one day prior to the examination.

  D.    The case investigator should contact the examinee and schedule an appointment for the examination at a time/date determined by the examiner.

Page #31
Criminal Investigation Division

    E.     The examinee should be informed by the investigator not to use any alcohol/drugs within a 240hour period prior to the examination, if the polygraph is to be used.

    F.     The case investigator should inform the examinee that he/she is not required to take a polygraph examination.

    G.    Every effort should be made to conduct the examination during the morning hours or at a time when the examinee is well rested.

    H.    The results of the examination will be documented in supplemental report form as soon as possible after the examination.  Additionally, the case investigator will be personally notified of results.

4.    Procedure

    A.    Polygraphists will interview suspects in accordance with accepted techniques and constitutional constraints.

    B.    The Examiner will review and be familiar with the crime situation and investigation for which the Examination will be used.  This can be accomplished by visiting the crime scene, reviewing reports and interviewing personnel connected with the case.

    C.    The subject(s) to be examined are then interviewed, the test questions Formulated, and the examination administered.

    D.    Polygraph Examiner will then interpret the test results, and complete written reports, explain the results, and maintain other related clerical duties.  They will also be required to prepare case documents for court presentation and respond to subpoenas.

    E.    Polygraph Examiners are also required to perform preventative maintenance repair minor instrument malfunctions and provide calibrations within national standards.

    F.    All Polygraph Examiners will maintain a file of all Polygraph Examinations to include charts and records of each test they administer.

    G.    Results of Polygraph Examinations will not be used as the single determinant in any case.

Page #32
Criminal Investigation Division

# III    BACKGROUND INVESTIGATIONS (Other than Pre-Employment)

1.    Criminal investigations frequently involve background investigations of person(s) suspected as participants in "White Collar" crimes, organized crime and major vice activities.  The very nature of these types of crime, require a considerable degree of discretion.

2.    The Harrisburg Police Bureau does not in itself, have the sources or resources to conduct background investigations requiring close scrutiny of personal finances multi-jurisdictional activities and questionable business transactions or practices therefore:

  A.    When members of the Harrisburg Police Bureau develop information that suggests an in-depth background investigation of person(s) suspected of involvement in the above mentioned crimes, this information will be documented and passed on to the Commander of C.I.D.

  B.    The Commander of C.I.D. will evaluate the information to determine if an investigation is merited.  If so, the Commander of C.I.D. will:

    (1)    Identify the purpose of the investigation

    (2)    Identify and recommend potential sources of information

    (3)    Provide avenues for use of the information collected

    (4)    Designate an investigator to coordinate the investigation

    (5)    Collaborate and facilitate investigative needs of the Harrisburg Police With the sources and resources of:

      a.    The State Attorney General's Office

      b.    The County District Attorney's Office

      c.    The Internal Revenue Service

      d.    Any other Criminal Justice Agency deemed necessary

    (6)    Maintain liaison and control of the investigation

3.    Information gathered as the result of a joint investigation will be controlled and disseminated by the initiating agency.

4.    Retention and destruction of investigative records will be consistent with state statutes of limitations of the crime being investigated or as prescribed by law.

5.    Purging or expunging of investigative or intelligence information will be consistent with the provisions of Chapter 91, Subsection C 9122 as required by law.

Page #33
Criminal Investigation Division

# CHAPTER 3

# ORGANIZED CRIME AND VICE CONTROL UNIT

I    POLICY

The Harrisburg Bureau of Police recognizes the serious nature of organized crime and vice conditions which threaten the social, financial health, and well-being of the community.  All sworn police personnel regardless of rank or assignment shall have the responsibility to suppress criminal activity and support the enforcement of all forms of organized crime and vice control activities.

II    RESPONSIBILITY

1.    The Commanding Officer in charge of the Organized Crime and Vice Control Unit will be responsible for coordinating and overseeing organized crime and vice control enforcement.

    a.    The Organized Crime and Vice Unit will be responsible for the investigation and enforcement of

        (1)    Illegal sale and distribution of controlled substances

        (2)    Illegal prostitution and pornography

        (3)    Illegal gambling operations

        (4)    Illegal sale and distribution of liquor

        (5)    Loansharking

        (6)    Labor racketeering

        (7)    Corruption

        (8)    Extortion and/or bribery

        (9)    Theft/fencing rings

        (10)    Firearms

Page #34
Criminal Investigation Division

# III    GOALS AND OBJECTIVES

1.    The Commanding Officer of the Organized Crime and Vice Control Unit shall develop goals and objectives relevant to the responsibilities of the unit and submit the same as part of the annual report at the end of each calendar year. This report shall be disseminated to all Unit Officers.

# IV    RECEIVING AND PROCESSING COMPLAINTS

1.    All Police personnel who have knowledge of illegal activity, vice or suspected vice conditions or organized crime activities, will immediately submit a written report, utilizing an Inter-Office Memo for the suspected violation, to the commander of the Organized Crime and Vice Control Unit.

2.    This report will then be sealed, and forwarded directly to the Commanding Officer of the Organized Crime and Vice Control Unit, who shall review the information and determine if the information shall be assigned for investigation or if the information is of an intelligence value.

    A.    If the information is of an investigative nature, the Unit Commander shall assign an investigator, who shall within 60 days complete and submit a report indicating any investigative efforts made. The investigator shall pursue all leads until either the actors are charged or the information is deemed inactive. Investigative methods may include but is not limited to undercover operations, decoy operations, and surveillance operations.

3.    Evaluating Complaints

    A.    Investigations into vice and organized crime offenses can involve tremendous expenditures of time, money and effort. In order to evaluate the accuracy and credibility of initial information, determine the scope and relative importance of the problem, and establish a solid investigation, the following questions should be considered

        (1)    Is the original intelligence information valid?

        (2)    What is the criminal nature of the problem?

        (3)    How important is the problem?

        (4)    What lead information exists?

        (5)    What investigative techniques might be used?

        (6)    Does the agency have sufficient resources?

        (7)    What possible operational problems exist?

Page #35
Criminal Investigation Division

4.      When police personnel or unit officers receive a complaint from a citizen, he/she shall proceed as outlined above.  All complaints will be logged and filed for intelligence purposes and record keeping needs.

5.      When an Organized Crime and Vice Control Unit member receives information on an offender, he/she shall review the information with the Unit Supervisor.  The supervisor shall then evaluate the information utilizing the above checklist before the officer shall commit himself/herself to an extended investigation.  Page #34 Criminal investigations Division.

## V      MAINTAINING SECURITY OF INVESTIGATIONS

1.      All reports relating to active undercover investigations shall be kept Confidential in the Metro Reporting System.  Upon the investigation being completed by an arrest, the report will be lifted of confidential status.

## VI     USE AND CONTROL OF INFORMANTS

1.      The Organized Crime and Vice Control Unit shall make every effort to protect the identity of a confidential informant.  To prevent the disclosure of an informants identity, the following shall be adhered to:

A.      A separate file listing information on confidential informants will be maintained by the Commanding Officer of the Organized Crime and Vice Control Unit. this file will be kept in complete anonymity for protection of the informants.

B.      Each informant will be assigned a code number which will identify each informants file.  Each informants file will contain:

(1)     Biographical and background information

(2)     Check for active warrants

(3)     Criminal History Record

(4)     Type of information received from informant

(5)     Informants involvement in operations

(6)     Payments made to informant

Page #36

Criminal Investigation Division

    C.     The code number will be used for the following:

        (1)    Track all payments to the informant

        (2)    Track reliability of the informant

        (3)    Identify informant in reports, warrants, etc.

2.     All informants used by the members of the Organized crime and Vice Control Unit must be approved as soon as possible by the Commanding Officer of the Unit. informants are not the exclusive responsibility of any one officer and the information given by informants is actually the property of the Police Bureau.

3.     Special care must be exercised when utilizing female informants, if at all possible, two officers should be present during any contact.

4.     Juveniles should not be used directly as informants unless written permission is obtained from their parent or guardian.

5.     Individuals on Probation or Parole should only be used as informants after notifying the particular agency who is supervising persons on Probation or Parole.

## VII   RECEIVING AND DISSEMINATION INFORMATION

1.     When a member of the Organized Crime and Vice Control Unit receives a request From an outside agency he shall:

    A.     Refer requests to the Supervisor of the Organized Crime and Vice Control Unit, who shall make the determination, i.e., should the information be released.

2.     The Supervisor of the  Organized Crime and Vice Control Unit shall maintain a file of all such requests that are received and the disposition of same.

3.     When the Organized Crime and Vice Control Unit enters into a joint investigation with another agency, the Unit Supervisor may permit a free flow of information between the investigative unit and the requesting agency if deemed practical on a case-by-case basis.

4.     The Supervisor of the Organized Crime and Vice Control Unit shall contact various outside agencies and obtain a representatives name to be contacted relative to sensitive investigations.  This file shall be maintained on a current basis, by the Unit supervisor to enhance the relations and the flow of information from other agencies involved in Organized Crime and Vice Investigations.

Page #37
Criminal Investigation Division

## VIII   CONFIDENTIAL FUND AND ACCOUNTING SYSTEMS

1.   The Harrisburg Bureau of Police shall maintain two confidential informant funds and accounting systems. One fund is for the purpose of payment for Vice-related operations, while the other fund covers all other investigations related to serious criminal activity.  Resources for this fund can come from various criminal justice agencies in addition to resources provided by the City.

   A.   The maintenance of the Vice fund will be the responsibility of the Commander of the Organized Crime and Vice Unit while the "general" fund will be maintained by the Chief of Police.

   B.   Allowable expenditures that can be made from the fund include:

      (1)   Controlled buys: Drugs, Guns, Sting Operations and etc.

      (2)   Payment of informants for information assisting in the investigation of Serious crimes

      (3)   Case expenses incurred

2.   Upon prior approval by Unit Supervisor, any other expenses incurred by the Organized Crime and Vice Control Unit shall be handled by existing city policy on purchasing.

3.   All allowable expenditures will be recorded by unit personnel on a "Form A", which will also serve as a receipt when monies are transferred from investigator to investigator.  Whenever payment is made to an informant in addition to properly noting the sum on "Form A", each payment will require the completion and informant signature on "Form B".  Form B will then be duplicated with the original and attached to "form A", the copies will then be placed in the particular informants file. Any allowable expenditures in excess of $100.00 must be pre-approved by the Chief of Police.

4.   At the end of each quarter during the year, the Organized Crime and Vice Control Unit Commander will prepare an audit and report of expenditures which will be forwarded to the Chief of Police.

5.   The Chief of Police will prepare a semi-annual audit and report on the general informant fund.  The audit will be conducted by the City's Controllers Office.

Page #38
Criminal Investigation Division

## IX      SURVEILLANCE AND UNDERCOVER EQUIPMENT

1.      The Organized Crime and Vice Control Unit shall maintain active checks of surveillance vehicles and other specialized equipment intended for Unit use.  In the event that a piece of equipment is found defective, written notification shall be made to the Unit Supervisor who shall attempt to have the defective equipment repaired or replace.

## X      INTER-BUREAU COORDINATION

1.      When the Organized crime and Vice Control Unit compiles active information indicating criminal trends or long-range direction, the investigator shall forward a report to the Captain of the Criminal Investigation Division for review.  If the Captain of the Criminal Investigation Division agrees with the report, the report will be forwarded to the affected units for disbursement.

## XI      INTRA-BUREAU COORDINATION

1.      Because organized crime and vice activities can exist in several communities at one time, successful law enforcement efforts of one agency often displace, rather than eliminate the problem of another community.  Therefore, the Harrisburg Police Bureau will assist and exchange information and personnel with other surrounding areas.  The supervisor of the Organized Crime and Vice Unit will serve as a liaison between the Bureau and representatives from other agencies to ensure proper cooperation in exchange of information and personnel.  Approval will be obtained from the Chief of Police before Bureau officers are assigned to work in other jurisdictions.

## XII      SURVEILLANCE OPERATIONS

1.      The Organized Crime and Vice Control Unit Supervisor shall be responsible for coordinating and planning organized crime and vice control surveillance, undercover, and decoy operations.

2.      Surveillance operations shall be well planned prior to implementation.  Guidelines for planning operations shall include

   A.      Analyzing crimes and victims to determine the nature and scope of personnel, equipment, and activities, required to safely and effectively conduct the operation.

   B.      Identifying and analyzing probable offenders and their habits, associates, vehicles, methods of operation, or any other pertinent information which will affect the manner of surveillance and potential prosecution.

   C.      Familiarize officers involved in the surveillance operation with the neighborhood or target area.

      D.     Maintaining confidentiality of undercover officers' false identity.

      E.     Determining operational procedures for observation, arrests and "tail", to ensure the continuity between the planning and the conduct of the surveillance operation.

      F.     Supplying required expense funds to officers in accordance with established Bureau procedures.

      G.     Establishing means for routine and emergency communication.

      H.     Selecting equipment and vehicles required to include:

          (1)     Weapons

          (2)     Vehicles

          (3)     Communications Equipment

          (4)     Audio and visual monitoring equipment

          (5)     Other surveillance undercover or decoy supplies

      I.     Providing relief for officers involved in the operation so that surveillance may continue over an extended time period if needed

      J.     Communication with the prosecutor to determine legal ramifications.

3.     When conducting undercover operations, they should be planned in accordance with the guidelines in Section XII Subsection 2.  However, additional consideration must be given to the following criteria:

      A.     Making contact with suspects via undercover personnel

      B.     Analyzing the neighborhood or target area where undercover and support officers will work.

      C.     Supplying undercover officers with false identity and necessary credentials, as well as maintaining confidentiality of false identities.

      D.     Providing guidelines for any arrest produced from the undercover Operation

      E.     Providing back-up security for undercover officers

      F.     Providing close supervision during implementation of the undercover operation.

Page #40
Criminal Investigation Division

4.   When conducting decoy operations, they should be planned in accordance with the guidelines in Section XII, Subsection 2.   However, additional considerations must be given to the following criteria:

   A.   Disguising officers to resemble victims

   B.   Developing operational procedures such as observation and arrest

   C.   Determining the number and placement of back-up officers for security and protection.

   D.   Identification of participating personnel

   E.   Providing close supervision during implementation of the decoy operation.

5.   Surveillance, undercover and decoy operations may be affected singularly or simultaneously during the investigation of organized crime or vice offenses.  The Organized Crime and Vice Control Unit Supervisor shall notify the Communications Center Supervisor and the Patrol Supervisor of the nature and location of the operation prior to implementation of at all possible.

# XIII   RAIDS

1.   The Supervisor of the Organized Crime and Vice Control Unit shall be Responsible for coordinating and planning raids.  He shall also have the authority to grant or deny authorization for the raid.

2.   The Organized Crime and Vice Control Unit Supervisor shall notify the Communications Center Supervisor and Patrol Supervisor of the nature and location of the raid prior to implementation if at all possible.

   A.   Raids shall be well planned prior to implementation, guidelines for planning R

aids shall include:

      (1)   Developing strategies and tactics for approaching, entering, securing, and leaving the target of the raid

      (2)   Searching for and seizing evidence and/or contraband

      (3)   Selecting equipment and vehicles for evidence, test kits for Controlled substances

3.   Selecting and communicating with specialized support units, such as evidence technicians and medical assistance if necessary.

Page #41
Criminal Investigation Division

4.      Establishing means of communications to be used by officers involved in the raid.

    A.      Major raids will be planned and coordinated well in advance of the actual date of the raid, so that manpower, equipment and other materials can be provided for.

5.      Arresting suspects as well as transporting to Booking and processing

6.      Providing proper documentation of activities associated with the raid, as well as evidence seized and suspects arrested.

7.      Personnel involved in raids effected during the investigation of organized crime and vice offenses shall adhere to all Bureau policies for the use of force and deadly force.


## XIV   STATUS REPORTS

1.      On a monthly basis the supervisor of the Organized Crime and Vice Control Unit shall submit to the Chief of Police, via the Chain of command, a written report summarizing complaints, investigations, and arrests involving the Organized Crime and Vice Control Unit.

Page #42
Criminal Investigation Division

# CHAPTER 4

# JUVENILE OFFENDER SECTION

## PREFACE

Procedures have been designed to provide the flexibility necessary to deal with youthful offenders.

The guidelines outlined in the following chapters are intended to provide the parameters for handling juveniles in most situations and are consistent with existing Police Bureau General Orders, Policies, Rules and Procedures.  Any conflicting information in this guide is to be resolved in favor of the General Orders and/or the "Juvenile Act" (Appendix).

## I   INTERVIEWS

1.   Basis of Policy

   A.   The Gault decision, handed down by the United States Supreme Court on May 15, 1967, while explicitly stating certain adjudicative procedures which are binding upon Juvenile Courts, also implies vague guidelines which police should follow in order to ensure that the Constitutional Rights of suspected juvenile offenders are protected.  The tenor of this portion of the Manual was strongly influenced by the United States Supreme Court ruling in Gault vs. Arizona.

   B.   More broadly stated, the theme of the Gault decision reflects that many of the humanitarian aspects of present juvenile court and police procedures should be retained; that courts should continue to protect and help the child; that police should continue to dispose of selected cases without formal referral to court.

   C.   The theme of Gault also implies that such benevolence must not be made at the expense of the offender's Constitutional Rights whenever there is a possibility of serious curtailment of his freedom of movement

   D.   Since the theme of the Gault decision appears to differentiate cases as "coercive action" or "noncoercive action", we have provided for these two approaches to such interviews.  Whenever a doubt exists, regarding the possibility of coercive action being taken, police personnel will resolve the doubt by applying the procedures prescribed herein for "coercive action cases".

Page #43
Criminal Investigation Division

## II COERCIVE ACTION CASES

1.  The following procedure will be employed in interviewing a juvenile whenever the investigating officer feels that the case <u>will</u>, or <u>might</u> result in coercive action being imposed against the juvenile.

    A.   Juvenile records will be checked for possible previous police contacts

    B.   The investigating officer should be alert for information regarding the child's Parents and environmental conditions

    C.   If the child is <u>less that eighteen years of age</u>, no statement (inculpatory or exculpatory) shall be elicited from him unless one of his parents or his guardian or interested party is present during the interview, and both the juvenile and the parent or guardian have been informed of the nature of the investigation on which he is to be interviewed, as well as their Civil Rights as set forth in "Miranda", and only after the juvenile and the parent or guardian has been allowed to discuss in private, not only the charges which are being investigated, but also the effects of their Miranda Rights.

    D.   Specifically, they are waiving the right to have an attorney present and, further and most importantly, they are waiving the right against self-incrimination, since any statement they may make can and will be used against them in a court of law.  The advisement of both the charges that you are investigating and the effect of their waiver of their Miranda Rights before they are given the opportunity for private discussion are of the utmost importance in order to ensure a constitutionally valid interview and/or prosecution.

    E.   After the advisement of the charges that you are investigating, the effects of waiving their Miranda Rights, and their time for private discussion and upon the return to the interview, the officer shall again notify all parties of their C.R., using the "Waiver of Rights", Miranda Warning Form prescribed by the department, and before continuing with the interview, of the possibility that the matter under investigation is subject to the courts possible decision to transfer the case to adult court if there are reasonable grounds, and if transferred to adult court, a prison sentence is possible.

    F.   This advisement shall be made by reading and allowing the juvenile and the parent or guardian to read the prescribed two part form, Constitutional Rights (Adults)/Waiver of rights-Miranda Warnings.  The form will be completed where indicated, by the involved officer and signed by the juvenile and his adult interested party.

2.  The purpose of this segment of the interview procedure is to ensure compliance with the principle which the United States Supreme Court set forth in the Miranda decision requiring that, in order to be valid a waiver of Constitutional Rights must be made voluntarily, knowingly and intelligently.

Page #44
Criminal Investigation Division

3.      Compliance with this requisite shall be duly noted on the Officer's report

4.      If at any time during the interview the child states that it is his/her desire to terminate
         the proceedings, the questioning shall immediately cease.  If the interview is one
         requiring parental consent, and if such consent should be withdrawn during the course
         of the interview, the officer shall discontinue the interview.  Nothing in this rule shall
         be construed as prohibiting the investigating officer from contacting the child and the
         parents at a later date in order to ascertain whether or not they might have a change of
         attitude regarding the interview.  However, care should be exercised to avoid the
         appearance of coercion.

5.      The interviewer shall include in his original notes and report, the place, date,
         Beginning and ending time of the interview.   If the interview is interspersed with rest
         Periods, the time and duration shall be duly noted.  Note should also be made of any
         Nourishment which the child receives during custody.

6.      If the child manifests any unusual physical or emotional conditions, the officer shall
         Make a note of it. We refer to such physical conditions as sleepiness, being under the
         Influence of drugs or alcohol, or emotional manifestations such as crying or hostility.

7.      Keeping the suspect guessing as to how much evidence has been compiled against
         him is a time honored interview technique: the rationale being that the resulting
         anxiety will cause the suspect to confess.  While there is much merit to this
         technique, MIRANDA has injected a consideration that invalidates the "KEEP
         THEM GUESSING APPROACH".  The interviewer must now remember that
         whenever a suspect in any way, indicates his desire to secure counsel or to have
         counsel appointed, interviewing shall immediately cease.  With this, MIRANDA
         requisite in mind, it is suggested that police personnel who wish to interview a
         juvenile suspect against whom they have significant, but INSUFFICIENT, evidence
         shall consider using the following procedure.

         A.      Advise the child and the parents of the Constitutional right to silence, and to
                  counsel as prescribed by law

         B.      Before asking whether or not they wish to waive such rights, it is
                  recommended that the investigating officer apprize the parents and the child of
                  the evidence which has been compiled against him. In this manner the suspect
                  and his parents will be more likely to express a desire to resolve the matter by
                  giving a statement if they are aware that the investigator has compiled
                  significant evidence against the suspect

         C.      Do not fabricate when informing the parents and/or child of the evidence
                  against him.  Hive a factual account of the evidence against him.

Page #45
Criminal Investigation Division

D.    After reviewing the evidence against the suspect, and before asking the suspect if he wishes to waive his Constitutional rights, he should be advised again of those specific rights.  The initial warning is given in order to ensure the legality of the procedure should the subject make a premature, unsolicited statement while the officer is recounting the evidence against him.  The rights warning is repeated in order to invalidate possible allegations that the child and his parents had forgotten the initial warning because of the intervening statements the investigating officer made.

8.    Whenever a suspect juvenile offender or his parents state that he does not wish to be interviewed, the investigating officer shall not seek to persuade him to do so

9.    Whenever parental permission is required for interviewing, the investigating officer shall evaluate those parents.  If he has reason to suspect that they might not comprehend the meaning or seriousness of waiving the juvenile's Constitutional rights, no interview shall take place until counsel has been appointed and given consent for such interview.

10.   Whenever the parents of a child openly express <u>DEEP</u> hostility towards their child, they shall be deemed to be incompetent to waive the juvenile's Constitutional rights. under such circumstances, interviewing would have to be sanctioned by counsel in order to be valid.

11.   Parents shall be deemed to be incompetent to waive a juvenile's Constitutional rights if either of them is the complainant in the case under such circumstances, the sanction of counsel will be required.

12.   No member of the Harrisburg Bureau of Police while in the presence of a suspected juvenile offender or his parents, shall make any statement that could reasonably be interpreted as implying that the Constitutional right to counsel should not be exercised.  This rule shall apply even though the child and/or his parents might earnestly solicit the officer's opinion regarding the advisability of retaining or requesting counsel.  The officer's reply to such requests for advice shall be that the police personnel are not permitted to render advice in these matters.

13.   Whenever a child  or his parents indicate that they wish to retain counsel or have counsel appointed, the investigating officer shall immediately discontinue the interview.  It shall not be resumed until counsel has been appointed or retained; not until client has had ample time and opportunity to confer with counsel.

14.   After counsel has been retained or appointed, the officer shall make no attempt to interview the juvenile unless counsel is present or counsel and child agree to such interview.

Page #46
Criminal Investigation Division

15.     The procedures are minimal requirements designed to comply with some of the implications and data of the Gault decision.  Juvenile Court Judges, within their respective jurisdictions, may see fit to apply more demanding criteria in determining the admissibility of inculpatory statements made by a suspected juvenile offender.  For example, they ruled that <u>NO</u> <u>Juvenile</u> has had sufficient experience to enable him to intelligently waive any portion of his Constitutional rights, and that before a juvenile's statement can be entered into evidence, the officer must show that the interview took place with the prior approval and in the physical presence of the child's parents and/or guardian.

# III   NON-COERCIVE ACTION CASES, E.G. TRUANTS, RUN AWAY VICTIM, WITNESS

1.     The following procedures will be employed in interviewing a juvenile whenever the officer is reasonably certain that no coercive action will ensue; even though the child should admit his guilt or complicity in the event under investigation.

   A.     Because a child's behavioral history is an important consideration in determining the ultimate disposition of his case, the Juvenile Record should be checked before he is interviewed.

   B.     The investigator should learn as much as possible about the suspected offender's parents and environment, depending upon the gravity of the offense.

   C.     Whenever practicable, the officer will seek permission of the parents or guardian before initiating the interview.  This will provide an opportunity to evaluate not only the adequacy of the parents, but also the home conditions.

   D.     The physical presence or absence of the parents during such interview is optional, unless the parents or guardian requests to be present.  When the parents cannot be present, a neutral person, such as a clergyman, may be present.

   E.     Because there is no coercive action anticipated, to prohibit the officer from encouraging the youth to admit his complicity in the incident under investigation, even though the youth may initially express reluctance to do so. the officer must understand that such encouragement would preclude the uses of the statement (and evidence derived there from) in court, should such action follow.

   F.     Whenever parental permission is sought and adamantly refused, no interview shall take place.  (Failure of the child and/or his parents to acknowledge the child's responsibility for the offense is <u>possible</u> grounds for handling a case formally that would, otherwise, have been disposed of at the police level).

Page #47
Criminal Investigation Division

G.  In all cases where a child has been interviewed, his parents shall be apprised of the results; unless the parents are accomplices or adversaries of the child.  This applies whether the results are positive or negative and whether the interview took place with or without parental consent.

H.  If a suspected offender has been transported somewhere for an interview, he shall be returned to the initial place of contact or his home whenever the interview has been completed, provided these environments are not prohibitively undesirable.

2.  Statement Forms

A.  Whenever the investigating officer deems advisable the taking of a formal statement, and whenever a child is willing to sign such statement, a waiver of constitutional rights will be used.  The child's parents or guardians shall be asked to sign as witnesses.  The parents or guardians must be physically present during the taking of the statement.

## IV    IDENTIFICATION

1.  Fingerprints and/or Photographs

A.  The Juvenile Act provides Law Enforcement Officers with the authority to take the fingerprints or photographs or both of any child alleged to have committed an act designated as a misdemeanor or felony.  The fingerprints and photographs may be immediately disseminated to Law Enforcement Officers of other jurisdictions and may be used for investigative purposes.  Officers having occasion to charge a juvenile with a misdemeanor of felony crime will take all reasonable steps to take the youth into custody and photograph and fingerprint him.  The Juvenile Act mandates the court to notify the arresting authority of dispositions in cases of alleged delinquency within seven (7) days.  If the youth was not adjudicated delinquent, the court will direct that the youth's photographic and fingerprint records be immediately destroyed.

## V    LINEUPS AND CONFRONTATIONS

1.  While the United States Supreme Court decision in UNITED STATES vs. WADE on June 12, 1967, related specifically to an adult who was placed in a post-inducement lineup, it may be well to abide by some of the lineup procedures which have been formulated as a result of that decision.  Remember that juveniles who are FOURTEEN years of age may, where circumstances warrant be transferred to (adult) criminal court where the WADE case requirements would apply.

2.  The following lineup procedures, therefore, are recommended whenever there is a reasonable possibility of institutionalization, should he subsequently be adjudged delinquent.

Page #48
Criminal Investigation Division

A.      The right to counsel during the lineup.

B.      The lineup should be composed of at least six (6) people, in addition to the suspected offender.

C.      They should have approximately the same physical characteristics as the suspected offender; age, size, complexion, hair type and coloration, etc.

D.      Their clothing should be similar to that of the suspect.

E.      If any member of the group is asked to do or say anything, all should be asked to do so.  (Talk, walk, turn, etc.).

F.      Nothing should be said or done which may tend to influence the witness in making an identification.

G.      Whenever there are two or more witnesses, each should be brought into the lineup room separately.  Those that have viewed the lineup should not be permitted contact with witnesses who have not yet done so.

H.      A word for word record should be kept of the comments or instructions given to both witnesses and lineup participants.

I.      A record should set forth the names, addresses, and physical description of all lineup participants, as well as their position in the lineup.  (you may be required to produce the lineup in court).

J.      A suspected juvenile offender who is IN OFFICIAL CUSTODY  can be forced to participate in a lineup despite his reluctance to do so, and despite protest by counsel.  (THE UNITED STATES vs. WADE).

K.      Whenever possible, avoid offender – witness confrontations in which the witness is shown a suspect separately and not part of a lineup.  This confrontation greatly weakens the value of identification.

L.      Exceptions to the confrontation rule are cases in which the witness is in danger of dying before a lineup can be arranged, or in which the suspected offender requests immediate confrontation.  The latter case would be optional with the investigator.  In those cases in which the suspected offender requests an immediate confrontation with the witness, it is suggested that such request be reduced to writing in order to refute later allegations that he had not requested the immediate confrontation.

M.      "One on one" confrontations are handled the same as with adults.

Page #49
Criminal Investigation Division

## VI      SEARCH OF JUVENILES

1.      Refer To General Order #7 "Prisoners".

## VII     SEARCH OF PREMISES

1.      The law and techniques for searching premises, vehicles, etc., which govern adult
         cases, are identical to those applied to juvenile cases.

## VIII    POLICE JUVENILE CONTACTS AT SCHOOLS

1.      Police – juvenile contacts at schools constitute an interruption of the education
         process and should be restricted to an absolute minimum.  Members of the
         Harrisburg Bureau of Police who have occasion to investigate cases in which school
         age children are thought to be involved as offenders, witnesses, or victims should,
         when practicable, arrange to contact the children after school hours or during non-
         school days.  Convenience to the investigating officer should not be the reason in
         determining time and location of contact.

         A.      School officials, within their respective jurisdiction are in "LOCO PARENTIS"
                  of the child from the time he leaves his home until he returns.  Because they are
                  in "LOCO PARENTIS" school officials have the right to deny the officer
                  access to the child unless the officer is acting in "FRESH PURSUIT", or upon
                  court orders.

         B.      Similarly, school officials have the right and the responsibility to place
                  whatever restrictions or conditions which they deem necessary upon such
                  police – juvenile contact.

         C.      Because of the divergent viewpoints held by school administrators throughout
                  the Commonwealth, uniformity in police – juvenile contact procedure cannot be
                  achieved at this time.  However, a formal agreement has been reached with the
                  Harrisburg School District regarding police contacts.

The following section has been taken directly from the "Law Enforcement Procedure
agreement" between the City of Harrisburg and the Harrisburg School District

## IX      PROCEDURES

1.      Investigatory Procedures

         A.      School Related – in the event that the alleged crime occurred on school property
                  involving a school employee or student or the school itself as the victim of the
                  crime.  The principal or designee upon receiving notification from the
                  classroom and provide appropriate confidential space in which an interview can
                  be conducted.  The principal or designee will be present during the interview.

Page #50
Criminal Investigation Division

B.   <u>Non – School Related</u> – in the event that the police in the course of investigating a crime are unable to locate a juvenile witness, due diligence having been exercised to locate the witness, and information has been received that said juvenile is present at school, the investigating officer will notify the principal of the particular school of the need to interview the juvenile and will be allowed to either interview the juvenile on school property or to remove said juvenile in order to conduct the necessary interview.  The principal or designee will provide for the removal of the student from the classroom.

C.   If the student is being interrogated by police as a suspect in a crime, parents shall be notified in accordance with Section 2, D, on the following page. notification of Parents.  No interrogation of a student as a suspect in a crime will be conducted by police without the student's parents being present.

D.   If a child is being interviewed as a witness or victim of a crime, and not as a suspect, Section 2 D, Notification of Parents will not apply.  The interview can be conducted by police without the parents of the child being notified and present.  The principal or teacher must be present in place of the parent.

2.   Arrest

A.   No –Dangerous Offender – in the event the police have an arrest warrant for a non-dangerous offender, the police officer will contact the principal of the particular school prior to arriving at the school to make arrangements to apprehend the juvenile.  Prior notification is to allow for the School District to ascertain the actual presence of the juvenile, notify the officer of a non-class change time to arrive to make the arrest.  The officer(s) involved will also ascertain which entrance the School District wishes them to use to enter the building.  Upon their arrival, they will use such entrance to report to the principal or designee.  The principal or designee will provide for the removal of the juvenile form the classroom allowing the officer(s) access to the area so as to minimize escape.

B.   Dangerous Offender – in the event that it is necessary that the police make an arrest of a juvenile who is thought to be either armed, given to violent behavior, or mentally disturbed, the police officer shall notify the principal of the appropriate school prior to going to that school in order to ascertain the presence of the subject juvenile and a time not involving a class change or lunch hour which is most appropriate to effect the arrest without endangering the well-being of a student.  The officer(s) involved will also ascertain which entrance the School District wishes them to use to enter the building.  Upon their arrival at the building, they will use such entrance to report to the principal or designee.  The police officers will accompany the principal or designee to the classroom in which the juvenile to be arrested can be found.

Page #51
Criminal Investigation Division

The police officer will attempt to remain out of sight of the classroom so that the principal may enter the room and remove the juvenile from the classroom. at which time the police may affect the arrest.

C.   Immediate Intervention – in the event that police respond to a school in which a crime is currently being committed which requires immediate intervention by police officers, the procedures set forth above will not apply.  Police officer(s) will be allowed to exercise their discretion and expertise to protect persons and property.

D.   Notification to Parents – The School District shall inform the student's parents of any interrogation of the student as a suspect by police, or arrest, so as to not interfere with the officer's ability to affect the arrest or interrogation.  The parties recognize that, under Section 6326 of Title 42, when a child is taken into custody, the person taking the child into custody shall notify the parent, guardian or other custodian of the apprehension of the child and the whereabouts within a reasonable time thereafter.

3.   Police Officers of the City shall at all times, when acting pursuant to this agreement, be subject to the supervision of the Bureau of Police of the City which shall have no responsibility to the School District other than that which is stated herein.

# X   TRANSPORTATION

1.   Transportation of Juveniles

A.   Refer to General Order #7 "Prisoners".

2.   Whenever possible, the transporting officer should notify headquarters the moment he leaves a given point and the moment he arrives at his destination with the juvenile.  Any unusual delay en route should be duly noted and the time recorded.

3.   Transportation of a female juvenile should not be taken by an officer unless he is accompanied by a female officer (if available), another officer, or an adult.  Should circumstances demand solitary transportation, the officer is instructed to notify headquarters of departure and arrival time and of beginning and ending odometer reading.

# XI   CUSTODY

1.   Police Custody of Juveniles

A.   Refer to General Order #32 "Juveniles In Police Custody".

Page #52
Criminal Investigation Division

## XII   VIOLATION OF PROBATION AND PAROLE

1.   Harrisburg Bureau of Police personnel shall not take a juvenile probation or parole violator into custody unless:  the officer sees such violator perform an action which constitutes an infraction of the Pennsylvania Juvenile Court Act, or the Probation officer specifically requests that the child be taken into custody.

## XIII   USE OF FORCE

1.   Refer to General Order #5 "Discharge of Firearms by Police Personnel", and General Order #4, Use of Non-Lethal Force.

2.   Officers are reminded that profane and abusive language by the juvenile being arrested does not constitute "resistance", and that an officer is acting illegally when physical force is utilized to quell verbal abuse.

3.   The arresting officer must not hesitate to use sufficient force to overcome physical Resistance; but, he must be ever mindful that the use of force is subject to particular Public scrutiny when the arrestee is a juvenile.

## XIV   DETENTION OF JUVENILES

1.   The Pennsylvania Juvenile Court Judge's Commission Handbook defines detention as:  "The provision for the temporary care of children in secure custody pending hearing or transfer to another jurisdiction".  The act of detaining a child for a few minutes in order to interview him is not detention as used in this context.  The following guidelines are to be rigidly applied:

2.   Detention Guidelines

   A.   It is the policy of the Harrisburg Bureau of Police to limit requests for detention of juveniles to an absolute minimum.

   B.   Personnel who contemplate placing a child in detention shall not make the request to county juvenile authorities until authorization to make such request has been received from a Juvenile Offender Section Detective or Supervisor.  In the event they are not available, the officer's immediate supervisor may authorize the request of a formal detention.

   C.   The placement of a juvenile in detention is a serious matter which should only be requested if at least one of the following requirements has been met:

      (1)   Detention is required to protect the person or property of others, or of the child.

      (2)   Because the child may abscond or be removed from the jurisdiction of the court.

(3)    Because the child has no parent, guardian, or custodian or other person able to provide supervision and care for him and return him to court when required.

(4)    An order for detention or shelter care has been made by the court pursuant to the Juvenile Court Judge within whose jurisdiction they are functioning in matters of detention policies.

(5)    Harrisburg Bureau of Police personnel will be guided by the policy promulgated by the Juvenile Court Judge within whose jurisdiction they are functioning in matters of detention policies.

(6)    Officers transporting juveniles to detention are requested to remain at the facility until the admission procedures are completed.

(7)    Police reports must be completed in the computerized Field Reporting System by 1000 hours on the morning following the detention.  Reports will include, at least, an Initial Crime Report (ICR), a report of juvenile Contact (JV), and a Probable Cause Affidavit (PC).  It must be noted on the JV that the reports are ready to be sent to Probation.

(8)    Detention Hearings will be held by the court, or an appointed juvenile court master, within 72 hours.  The police officer filing the petition will not be required to attend except in unusual situations when attendance is requested by the court or Juvenile Probation.

## XV   TARGETED CRIMES

1.    The Dauphin County Juvenile Probation Authorities shall be contacted before the Release of any juvenile arrested for the following crimes:

A.    Attempted Murder

B.    Voluntary Manslaughter

C.    Felonious Aggravated Assault

D.    Arson 3301(A)

E.    Robbery 3701(A) 1,11,111

F.    Rape

G.    Involuntary Deviate Sexual Intercourse

H.    Kidnapping

I.    Aggravated Assault with a Deadly Weapon

Page #54
Criminal Investigation Division

3.     Additional Guidelines – Detention Should Not Be Used

    A.     As a convenience to staff working with the child

    B.     As "Punishment" or for short term "Treatment"

    C.     For children who are not almost certain to run away or commit other criminal offenses before court disposition.

    D.     For neglected, dependent and non-delinquent emotionally disturbed children.

    E.     For children who are chronic school truants, and

    F.     For children who are material witnesses, unless custody is the only way to protect them from being tampered with as witnesses.

4.     Procedures for Detaining a Child at Facilities Operated by Dauphin County Juvenile Detention Services.

    A.     Only children who have committed, or who are alleged to have committed delinquent acts may be detained.

    B.     Determine jurisdiction and whether there is sufficient evidence for filing of a petition.

    C.     Determine if there are legal grounds for detention (refer to Section 13)

    D.     The Probation Officer must approve the request for detention before the juvenile will be accepted by any of the facilities operated by the Dauphin County Juvenile Detention Services.  During working hours (8:30a.m. to 4:30p.m., on Monday through Thursday, 8:30a.m. to 4:00p.m. on Fridays). Contact the Duty Intake Officer at 255-2680.  After hours and on holidays, the on-call officer can be contacted by calling the Dauphin County Communications Center at 558-6900.  If the request for detention is approved, the Probation Officer will notify the staff at the detention facility.

    E.     Before the juvenile is transported to the detention facility, the parents, guardian, or other custodian must be notified, if possible, and be made aware of what is transpiring, and what the police and Probation Office intend to do with the juvenile.

        EXCEPTION:     When a youth is <u>NOT</u> referred to Probation Authorities for final disposition.

Page #55
Criminal Investigation Division

2.      During this contact, the Probation Officer shall be provided with:

A.      All pertinent information regarding the juvenile in custody

B.      All pertinent information regarding the victim, witness, or others

C.      Circumstances of the incident

D.      Other pertinent information as requested by the Probation Officer

3.      Officers making contact with the Probation Officer are instructed to refrain from expressing their personal view toward the juvenile, however, a recommendation to the Probation Officer shall be made based upon factual and objective information that is available at the time.  If there is no or little information to share, this shall also be made known to the Probation Officer.  Officers are reminded that the sole authority for juvenile detention is the Juvenile Court and Probation Office.  All refused and/or approved detentions shall be noted on appropriate reports.  Any disagreement regarding detention shall be recorded on an Inter-Office Memo directed to the Commanding Officer of the Section.  Confrontations with juvenile officials regarding detention are not condoned and will not be tolerated.

## XVI   POLICE DISPOSITION OF JUVENILES

1.      Criteria for Police Disposition

2.      The following criteria will be applied by Juvenile Offender Section Detectives And Supervisor in determining police disposition of juveniles.

A.      Bureau/Section Policy
B.      Own judgment
C.      Own experience
D.      Age of youth
E.      Nature of the offense
F.      Severity of the offense
G.      Prior contact
H.      Youth's attitude toward accepting and cooperating with efforts to help.
I.      Youth's need for professional help – either mental, emotional, or physical.
J.      Parents' awareness of the needs of their children – either mental, emotional or Physical.
K.      Parents' awareness of the seriousness of their child's involvement with the Police.
L.      Parents' interest and ability to control or discipline their child
M.      Parents' attitude toward the youth's delinquency (fault or friends, society, etc.)
N.      Parents' attitude – constructive or negative toward their child, police, or Problem.
O.      The "Rights" of the complainant.
P.      The safety of the persons and property in the community.
Q.      Home atmosphere and environment.
R.      Risk of recidivism.

Page #56
Criminal Investigation Division

## XVII  GUIDELINES FOR REFERRAL TO THE PROBATION OFFICE

1.      Offense is serious in nature

2.      Offense itself is not serious in the body of the incident, however, the circumstances surrounding the commission of the incident seems to indicate that the youth needs some type of rehabilitative action

3.      A record of repeat offenses

4.      The youth or his parents prove to be unwilling to cooperate either with the police or social agencies

5.      The youth is not willing to cooperate with a non-authoritative agency

6.      The needs of the youth can best be obtained through the Probation Office and its services

7.      Youth denies involvement in an offense, and judicial determination is necessary

8.      Youth is already on probation from a previous offense

9.      The offense is a sophisticated criminal offense (premeditation – weapon – strong arm methods).

10.     The Juvenile cannot be rehabilitated until he or she recognizes their own guilt when available evidence proves him/her guilty, the only conclusion that can be made is that the juvenile would not be helped by an informal police action, thus the referral to a formal probation or court disposition becomes an obvious need.

Page #57
Criminal Investigation Division

# XVIII TYPES OF PROBLEMS AND WHAT TO DO

1.   Injured Juvenile in Custody – It is urged that the child be transported to the nearest hospital.  It is imperative that the parents be notified and requested to be present at the hospital to give consent for treatment.

2.   Out of State or County Runaways (non-Delinquent) – when it is determined that the juvenile in custody is from another County or State, and a missing person report has been filed, the police officer should secure the following:

   A.   Name, age, residence, and description

   B.   If the juvenile is on probation, parole, or a runaway from an institution and who the probation officer is

   C.   The parent's correct address and phone number

   D.   Contact the parents, guardian, or other custodian and notify them that the juvenile is in custody.  Attempt to make arrangements with them to pick up the juvenile as soon as possible

   E.   When it is determined that the child should be held pending the arrival of the parents or other guardian, contact the County of Dauphin Child Care Service at 255-2870

3.   Out of State or County Runaways (From Court Ordered Commitments)

   A.   The same procedure is followed as far as obtaining pertinent information

   B.   Contact the Intake Officer of the Probation Officer on call after working hours and on holidays to request detention.  (Intake Officer during business hours – 255-2680; Probation Officer on call via Dauphin county Communications Center – 558-6900.

   C.   If the juvenile is detained, the police officer must file incident reports to be forwarded to Juvenile Probation.  Teletypes will be sent to Records Center as external case documents

4.   Status Offenders – When police receive reports on juveniles committing status offenses (Refer to Definitions), the police have the option of referring the juvenile to various Human Services Agencies for counseling

   NOTE:  Detention cannot be used for status offenders.

   OFFENSES:  Truancy – Generally referred to the Child Care Service

   INCORRIGIBLE:  (May include runaways)  Refer to the agency emergency services listing.  (See Appendix)

Page #58
Criminal Investigation Division

## XIX   MISSING AND RUNAWAY CHILDREN

1.      The Following procedure shall be instituted whenever a child is reported missing from the City of Harrisburg.

      A.      A teletype shall be sent to the appropriate Law Enforcement Agency when there is reason to believe the juvenile has left the City and gone to a specific jurisdiction.  In any event, the child must be entered into C.L.E.A.N. and N.C.I.C.

      B.      An investigation shall be initiated for the purpose of locating the child.  The scope and urgency of such investigations shall be determined on the basis of the following criteria:

            (1)      Age of the Child

            (2)      Indication of foul play or accident

            (3)      Indication of custody conflict between parents, guardian, etc.

            (4)      Whether the child appears to have voluntarily run away, or is missing under suspicious circumstances

            (5)      If runaway, the basis for this conclusion and past history of such occurrences

2.      Whenever a child, who resides within the Harrisburg City limits has compiled a record of three or more missing person or runaway incidents, the Juvenile Offender Detective shall investigate in order to determine the cause.  The rationale behind this rule is that habitual running away is symptomatic of profound family trouble.

3.      On the basis of the Juvenile Offender Detective's investigation, he  may deem it necessary to refer the child and/or family to a social agency.

4.      If there is evidence of child abuse, either physical or sexual, the Juvenile Offender Detective shall bring the matter to the attention of the Supervisor of the section who shall determine what action shall be instituted, and by whom it shall be instituted.

Page #59
Criminal Investigation Division

## XX   SPECIAL CONSIDERATION

1.   Restitutions

    A.   Suggesting or arranging for restitution in juvenile cases is not a proper police function, and no member of this department shall engage in this practice. Victims of offenses perpetrated by juveniles shall be referred to Juvenile Court Authorities or District Justices regarding all matters related to restitution. Victims must not be informed, however, that the court will arrange for restitution.  The entire area of restitution by juveniles and/or their parents is a subject of controversy.  Victims shall be informed that police are not authorized to order restitution, and that the victim should consult with county juvenile authorities regarding that phase of the problem.

    B.   Nothing in this section shall be construed as discouraging the practice of Settling minor damage cases on the police level through payment of Restitutions; providing such arrangements are negotiated between victim and Offender and/or his parents and that criminal charges have not been filed.

## XXI   POLICE RECORDS OF JUVENILES

1.   It shall be the policy of this bureau that the following procedure be followed regarding Juvenile Records:

    A.   Procedure

        (1)   It shall be the responsibility of the Commander of the Technical Services Division or his designee for:

            a.   Accountability of Juvenile Records

            b.   Collection of Juvenile Records

            c.   Dissemination of Juvenile Records

            d.   Retention of Juvenile Records

            e.   Destruction of fingerprint and photographic records

    B.   Compliance

        (1)   This policy shall be in compliance with "The Juvenile Act", PA. C.S. ss. 6308, 6309. And 6341.

        (2)   Refer also to General Order #32, "Juveniles in Police Custody".

## XXII  NEWS RELEASES INVOLVING JUVENILES

1.      The basic attitude of the Harrisburg Bureau of Police is that, in most cases, it is inadvisable to make public the names of juvenile victims, suspects, or offenders. There are, however, multiple local factors which could influence this decision as to the releasing of names to representatives of the news media.

2.      Refer to the Juvenile Act, Title 42, Section 6308(b), "Public Availability", access to Law Enforcement records of juveniles dealing with public.

## XXIII INVESTIGATIVE PROCEDURES AND GUIDELINES

1.      Summary of Interviewing Procedures

A.      The following procedures are required by the Supreme Court of Pennsylvania before a police officer may interrogate a juvenile concerning a crime.

(1)      The parent, guardian or other custodian and the juvenile shall be informed of the reason of the interview and/or conference.

(2)      They shall be informed if any charges logged or pending against the juveniles.

(3)      They shall be advised of their Miranda warnings.

(4)      They shall be given private time to discuss the matter.

(5)      In the event an attorney is requested, the interview and/or conference shall be terminated until such attorney can be reached and the matter rescheduled.

(6)      In the event that both parties waived their rights, the interview and/or conference shall continue documenting in writing their waiver by completing the approved Bureau form, Rights/Waiver – Juvenile.

(7)      The time limitation of the interview and/or conference shall be at the discretion of the investigating and/or interviewing officer with special consideration for the mental and physical state of the juvenile involved, and as to the seriousness of the investigation at hand.

(8)      Both Bureau Policy and the Juvenile Justice System shall also be Explained to both parties as the issue pertains.

(9)      The number of police officers present during the interview and/or Conference shall be kept to a minimum usually 1 or 2 multiple officers Need not be present except under extraordinary circumstances.

# XXIV INVESTIGATIVE REPORTING SYSTEM OUTLINE

1.    Case Check List

    A.    Initial Crime Report

    *B.    Supplement Report

    *C.    Miscellaneous Report

    *D.    Juvenile Contact Report (complete, to include (PC), if child is charged and Known aliases)

    E.    Waiver of Constitutional Rights/Miranda Warnings – Juvenile

    *F.    Written, signed statements (may be VS in Field Reporting System)

    *G.    Property Record

    *H.    Photographs

    *I.    Fingerprint Comparison Reports

    *J.    Disposition Sheet from County Juvenile Probation if applicable

    K.    Others as Applicable

    L.    Complainant notified – case status (Noted in narrative portion of IC or SP Reports)

    M.    Witnesses notified – case status (Noted in narrative portion of IC or SP Reports)

    N.    Accused notified – case status (Noted in narrative portion of IC or SP Reports)

    NOTE:    *When Applicable

# XXV  SOLVABILITY FACTORS

1.    The following are the basic Solvability Factors that Detectives should look for before Administratively Closing a case.  Keeping in mind that if the factors are present the case should be continued

    A.    The Recommended Twelve Solvability Factors

        (1)    Witness to the crime

Page #62
Criminal Investigation Division

     (2)     Knowledge of a suspect's name

     (3)     Knowledge of where a suspect can be located

     (4)     Description of a suspect

     (5)     Identification of suspect

     (6)     Property with identifiable characteristics, marks or numbers so it can be traced

     (7)     Existence of a significant M.O. (Method of Operation)

     (8)     Presence of significant physical evidence

     (9)     Presence of a description which identifies the vehicle used by the suspect

     (10)    Positive results from a crime scene evidence search

     (11)    Belief that a crime can be solved with publicity and/or reasonable additional investigative effort

     (12)    An opportunity for, but one person to have committed the crime

B.    The following are standards of performance for detectives assigned to the Juvenile Offender Section.  The assigned detective shall:

     (1)     Interview all:

         a.     Victims

         b.     Complainants

         c.     Witnesses

         d.     Suspects (unless they or their legal counsel refuse)

         e.     Accused (unless they or their legal counsel refuse)

2.    Record relative information from interviews on supplemental reports.

3.    In the event a verbatim written statement is taken:

A.    The statement shall contain information obtained only in the juvenile's own words.  Detectives are not permitted to paraphrase the words of others.

B.    A synopsis of the statement will be recorded on the supplemental report.

Page #63
Criminal Investigation Division

   C.  The detective receiving the written statement shall ensure that the juvenile supplying the written statement reads, initials and signs the statement.  It **MUST** be witnessed (signature) by his parent, guardian or other interested party.

4.  Before interviewing a juvenile suspect or accused, the detective shall use the procedure outlined under "Coercive Action Cases" of the Juvenile Offender Section Manual.

5.  Shall eliminate all prescribed solvability factors before administratively closing a case.

6.  Notify, when appropriate, the following at the conclusion of an investigation of the outcome of the investigation but in all cases, the victim.

   A.  Complainant

   B.  Victim

   C.  Suspect

   D.  Accused

   E.  Witness

7.  Ensure that all necessary forms and reports are filled out completely and correctly before forwarding the case to a supervisor for final approval.  These forms/reports include, but are not limited to:

   A.  Initial Crime Report

   B.  Supplemental Report

   C.  Continuation Report

   D.  Juvenile Contact Report

   E.  Waiver of Constitutional Rights/Miranda Warnings – Juvenile

   F.  Written, signed statement

   G.  Property Record

   H.  Photographs

   I.  Fingerprint Comparison Report

Page #64
Criminal Investigation Division

    J.      Allegation Report for each incident

    K.     Child Abuse Report (Children & Youth)

    L.      Disposition Report for each incident

    M.    Juvenile Card

    N.     Others as applicable

8.     Strive to clear by arrest at least 60% of all Part One Crime Assignments

9.     Have a thorough knowledge of the Juvenile Act

10.    Coordinate and oversee the police disposition of all juvenile matters throughout the city during his/her tour of duty.  This includes but is not limited to ensuring that:

    A.     The proper forms are used

    B.     The forms are complete and filled out correctly

    C.     The parent/guardian is notified of the juvenile's apprehension and the disposition of the case.

11.    When possible, detectives should make preventative checks at the following locations:

    A.     Daily – All Shifts

         (1)    Reservoir Park

         (2)    Italian Lake

         (3)    City Island Park

         (4)    river Park

         (5)    Harrisburg Transportation Center

         (6)    Kline Village Shopping Center

         (7)    Uptown Shopping Center

         (8)    All City Schools (when in session)

Page #65
Criminal Investigation Division

      B.     <u>Daily – All Shifts, where applicable</u>

            (1)    City Pools

            (2)    City Playgrounds

            (3)    Sporting Events

            (4)    Mass Social Gatherings (Fairs, Carnivals, etc.)

            (5)    Under 21 Clubs

            (6)    Teenage Social Gatherings (Dances, etc.)

      C.     <u>Daily – "B" Shift</u>

            (1)    All City Schools when in session

12.    Advise the Section Supervisor of activities and/or conditions which may require other Division/Section action.

13.    At the direction of the Section Supervisor, deliver talks on juvenile related subjects to groups that have requested such programs.

14.    Resolve criminal matters in which the offender is known to be a juvenile by identifying the accused, effecting the apprehension and making the appropriate disposition as mandated by the Juvenile Act.

15.    Remove children from parental custody only when the child's welfare or safety, or the protection of the public, needs to be safeguarded.

16.    Be responsible for the correct operation and care of office and motorized equipment assigned to him/her.

17.    Submit reports that are:

      A.     Factual

      B.     Accurate

      C.     Objective

      D.     Complete

      E.     Concise

      F.     Clear

Page #66
Criminal Investigation Division

      G.     Mechanically Correct

      H.     Written in Standard English

      I.     On Time

18.     Collect and preserve evidence in keeping with Bureau Procedure.

19.     Make random inspections of businesses and areas where juveniles frequent.

20.     Make computer (CAD) entries to reflect daily work on each case.

21.     Make follow-up investigations promptly by:

      A.     Entering into report system a supplemental report for review by supervisor Within (60) calendar days after date of assignment.

      B.     Have case complete and a disposition made within sixty (60) days of Assignment unless case extension is authorized by supervisor

22.     Dispose of cases using the following categories:

      A.     Cleared (by arrest)

      B.     Exceptionally Cleared (No Prosecution/referral to other agency)

      C.     Unfounded

      D.     Administratively cleared (No leads)

23.     Make use of computer (METRO) regarding crime patterns.

24.     Keep self-informed of what is happening in the City.

25.     View Police problems with youth on the basis that prevention, rehabilitation and containment are of prime importance

26.     In the event of a Rape, Involuntary Deviate Sexual Intercourse and/or serious Child Abuse, the assigned detective shall:

      A.     Notify the District Attorney's office or the District Attorney of the month during weekend and evenings before making any arrests.

      B.     <u>Exception</u>:  When an immediate arrest must be made at the scene or when in "Hot Pursuit" of a suspect.  The District Attorney is to be notified as soon as possible after the arrest.

Page #67
Criminal Investigation Division

      C.     Protect the crime scene.  Implement General Order #13

      D.     Gather all evidence for scientific tests utilizing forensics personnel.

      E.     Photograph the crime scene.  (Forensics)

      F.     Search for latent fingerprints.  (Forensics)

      G.     Have the victim taken to the Harrisburg Hospital immediately or as soon as possible.

      H.     Photograph victim, scars, wounds, marks, etc.  (Forensics)

      I.     Photograph torn clothing.  (Forensics)

      J.     When the victim is emotionally able, take a complete and detailed written verbatim statement.

      K.     Take complete and detailed written verbatim statements from all parties even remotely connected with the incident.

      L.     Attempt to take a statement from the suspect, after appropriate Miranda Warnings.

      M.     Note in investigative reports any scratches, bruises, wounds, marks, etc., on either the suspect or victim.

      N.     Secure a Search Warrant based on facts from the victim or witness, to search suspect's residence, automobile, place of work, etc., for weapons, clothing, pornography, etc.

      O.     Preserve all evidence, and transport same to laboratory for testing.  (Forensics)

27.     Maintain a favorable attitude towards your job.

28.     Get along well with other members of the organization, including supervisors.

29.     Use reasonable safety precautions in performing your duty.

30.     Keep to the very minimum, the number of complaints about your performance or Conduct.

31.     Strive for self-improvement

32     Be thorough and systematic in your investigation.

33.     Administratively close no more cases than absolutely necessary.

Page #68
Criminal Investigation Division

34.     Be objective in investigations.

35.     Provide a support service to patrol units when they deal with juvenile matters.

36.     Report on and off duty in accordance with the prescribed schedule of the Bureau.

37.     Use Sick Leave only when necessary.

38.     Maintain a dress code which reflects well upon the Bureau/Section and complies with General Order #26 (Uniform, Grooming and Equipment).

39.     Comply with all Rules and Regulations of the Bureau.

40.     Maintain a positive public image when in the public eye or ear.

41.     Refrain from loud, boisterous and/or unseemly conduct when in public.

42.     Strive to improve your skill level.

43.     Consistently do a day's work for a day's pay.

44.     Meet deadlines.

45.     Refrain from discussing problems of the Bureau or problems with fellow officers in public.

46.     Be willing to accept additional responsibility.

47.     Be willing to accept direction as a chance to improve performance.

48.     Accept change without causing inefficiencies, or slowing down progress.

49.     Initiate investigations or acts to produce more efficient, productive or economical methods and procedures.

50.     Refrain from using racial, ethnic, sexual or antagonistic remarks, both to the public and other members of the Bureau.

51.     Refrain from antagonizing and/or arguing with members of an outside agency.

52.     Stay familiar with crime trends in the City.

53.     Be enthusiastic and interested in providing a service to the public.

54.     When in court, exhibit poise, fairness and impartiality.

Page #69
Criminal Investigation Division

## XXVI ISSUING CITATION(S) TO JUVENILE OFFENDERS

I       POLICY

    1.    It shall be the policy of this Bureau that the following procedures be followed when issuing a juvenile a Citation.

        A.    Issuing a NON-TRAFFIC CITATION – See General Order #32

        B.    Issuing a TRAFFIC CITATION

    2.    Releasing the juvenile(s) for summary violation(s)

        A.    Refer to General Order #32

## XXVII REVIEW OF JUVENILE PROGRAMS, PROJECTS AND ACTIVITIES

I       POLICY

    1.    It shall be the policy of the Juvenile Offender Section that all Juvenile Projects, Programs and other Activities be reviewed on an "Annual" basis or as required by the Section Supervisor.

    2.    This review shall determine:

        A.    If such project, program or activity is effective and that the goals are being achieved.

        B.    If there is a need to update or revise any portions thereof

        C.    If such a project, program or activity is necessary to maintain proper juvenile related functions.

    3.    The Section Supervisor may designate a member of his section as the "Reviewing Officer".

    4.    The Reviewing Officer shall submit an Inter-Office Memo to the Section Supervisor indicating his findings of such review.  The Section Supervisor shall then forward said report to the Division Commander.

## XXVIII JUVENILE PROGRAMS, PROJECTS AND ACTIVITIES

I     POLICY

1.     It is the policy of the Harrisburg Bureau of Police, that all its members, in conjunction with the Juvenile Offender Section, actively strive in their efforts to prevent and control juvenile delinquency through the implementing and developing of such programs, projects or other activities designed to prevent those intellectual – emotional conditions in children that may result in delinquent behavior and to correct unwholesome influences and to lessen the opportunity for misconduct.

2.     The Commanding officer of the Criminal Investigation Division or his designee shall represent this Bureau and actively participate with other Law Enforcement Agencies, Social and Human Service Organizations in the updating, developing and exchanging of such related juvenile issues, projects, programs or activities.  This shall include, but not be limited to the following:

    A.     Diversion Project for Youths

       (1)     This project provides intervention and counseling services for youths that are behavioral problems, disciplinary problems, truants and other family issues.

    B.     Child Abuse Task Force/District Attorney's Child Abuse Prosecution Unit

       (1)     This active participation helps members of this agency to deal with and understand the problem of "Child Abuse".  It also provides us with the knowledge of what other agencies are doing about this matter.

    C.     Truancy Workshop/Dropout Prevention

       (1)     This is an ongoing workshop in which the Commanding Officer or his designee, is a member of the steering committee for Project GOALS in cooperation with the Harrisburg School District's attempt to curb truancy.

    D.     Operation Home Free

       (1)     This program provides a means of transportation home for runaway youths by the Trailways Bus Company at no expense to the youth or family.

    E.     Other

       (1)     The Juvenile Offender Section provides an opportunity for members of other agencies to meet and exchange information and participate in juvenile matters at bi-weekly section meetings.

3.      An Inter-Office Memo shall be submitted by the Juvenile Offender Section member assigned to these functions, outlining activities of the program and other related information.

4.      Any member of this Bureau shall have the right to participate in any of the above projects, programs or activities, pending authorization from the Division Commander.

5.      Social Activities and Functions involving juvenile participation

        A.      All members of this Bureau are encouraged to actively participate in civic and social functions in which youths are participants.  This participation and association helps to provide a better understanding of juvenile conduct and  is an expression of interest on our part in juvenile matters.  Such activities may include:

                (1)     Boy Scouts

                (2)     Girl Scouts

                (3)     Boys Clubs of America

                (4)     Various Sporting Associations

                (5)     Others

# XXIX DIVERSION PROJECT FOR YOUTHS

I       POLICY

1.      The Harrisburg Bureau of Police has implemented a "Diversion Project for Youths" which is a city-level response to the need for developing alternatives to involving the pre-delinquent in the juvenile justice system.

II      PURPOSE

1.      The purpose of "diverting" status offenders from detention and correctional institutions is to provide needed services that escape the labeling effects of the formal justice agency intervention.

2.      In lieu of criminal prosecution, individuals placed into the "Diversion Project for Youths" will receive counseling and other intervention services until such time as the youths conduct has been improved or corrected.

        A.      Youths that can be placed in this project shall not be "repeaters" of criminal offenses.

B.      The youth's age is to be considered.

C.      The youth's attitude and behavior is also considered.

D.      The nature of the offense.

E.      The past record of the youth.

F.      The response of the victim and the police officer shall be considered.

3.      The progress and participation of the youth shall be documented by the Diversion Project Coordinator or his designee.

4.      In the event that this agency cannot provide the appropriate counseling or intervention, referrals shall be made to other agencies participating in the Diversion Project.

5.      The Diversion Project for Youths shall not be used as a tool to escape criminal prosecution when warranted.

## XXX  JUVENILE OFFENDER SECTION WEEKLY SECTION MEETINGS

I      POLICY

1.      It is the policy of the Juvenile Offender Section that "Weekly" Meetings will be held each Wednesday of each week under the direction of the Section Supervisor or his designee.  This is in addition to the daily a.m. Division meeting/Roll Call.

2.      Topics and/or issues to be covered, shall include but not be limited to the following:

A.      discussing active and/or ongoing investigations which are of particular interest to all section personnel.

B.      To exchange specific or pertinent information.

C.      To update and improve juvenile issues, activities and/or services.

D.      To review and update new or changed policies or procedures or other legal issues on juvenile related matters.

E.      To provide a basic exchange of sectional information.

F.      To inform section personnel of various programs, projects or activities undertaken by this agency and/or other agencies.

G.      To obtain opinions, suggestions and/or comments for improving juvenile services.

Page #73
Criminal Investigation Division

H.     To invite representatives from other agencies to participate in these meetings and to exchange information.

I.      To participate and interact with agencies such as:

(1)     Harrisburg School District

(2)     Harrisburg Rape Crisis

(3)     Harrisburg Y.M.C.A.   and Y.W.C.A.

(4)     Catholic Social Services

(5)     Dauphin County Children and Youth

(6)     Dauphin County Juvenile Probation

(7)     Dauphin County Mental Health and Retardation Center

(8)     Dauphin county District Attorney's Child Abuse Prosecution Unit

(9)     District Attorney's Domestic Violence Unit

(10)    Others

J.      To participate in various workshops such as:

(1)     Child-Abuse Workshop

(2)     Truancy Workshop

(3)     Others

K.      Other functional matters relating to juvenile services and matters.

# XXXII  SOCIAL SERVICE AGENCIES LISTING

## I      POLICY

1.      It shall be the policy of this Bureau to provide to its members a listing of Human Services available through the County of Dauphin.  This information is contained and described in the Dauphin County Human Services Handbook.

Page #74
Criminal Investigation Division

2.      The Juvenile Offender Section and the Communications Center shall have the
        Responsibility of maintaining and updating each handbook; and making said book
        available to Bureau members.

3.      The following is a Directory of Services Available:

        A.      <u>Crisis Services</u>

                American Red Cross                                      234-3101
                Child Line and Child Abuse Registry              800-932-0313
                CONTACT Harrisburg                                     652-4400
                Rape Crisis Service of YWCA         800-654-1211   238-7273
                Women-In-Crisis                                        534-1101
                Dauphin county Emergency Management Services    238-1693
                Crisis Intervention (MH/MR)                            232-7511
                Poison Center                                          531-6111

        B.      <u>Medical Services</u>

                Hamilton Health Center                                 232-9971
                Harrisburg Hospital                                    782-3131
                Hershey Medical Center                                 531-8521
                Holy Spirit Hospital                                   763-2100
                Polyclinic Medical Center                              782-4141
                Osteopathic Hospital                                   652-3000

        C.      <u>Information and Referral</u>

                Bureau of Employment Security                          787-5279
                Catholic Social Services – Tri-County                  233-7978
                CONTACT Harrisburg                                     652-4400
                Family and Children Services                           238-8118
                Jewish Family Services                                 233-1681
                Mental Health – Information & Referral                 255-2888
                Harrisburg Hospital MH/MR – Handler Center            782-5218
                North Dauphin MH/MR – Handler Center                  232-8761
                Children Care Center                                   566-3267
                Opportunities Industrializations Center               238-7318
                Goodwill Industries of Central Penna.                  232-1831
                YMCA                                                   652-3681
                YWCA                                                   234-7931
                Spanish Community Center                               232-7691

Page #75
Criminal Investigation Division

    D.    <u>Court Related Services</u>

| | |
|---|---|
| District Attorney's Office | 780-6767 |
| Dauphin County Adult Probation | 780-6900 |
| Dauphin County Juvenile Probation Public | 780-7100 |
| Public Defender's Office | 780-6370 |
| ARC Schaffner Youth Center | 635-7399 |
| Dauphin County Prison | 780-6796 |
| Abraxis South Mountain Detention Center | 749-3066 |
| Abraxis Academy  Detention (Morgantown PA) | (610)-913-8000 |

    E.    <u>Drug & Alcohol Services</u>

(See Dauphin County Drug & Alcohol Commission    255-2984
For D/A Programs in County

    F.    <u>Family Problems</u>

| | |
|---|---|
| Parents Anonymous | 800-984-9923 |
| National Runaway Switchboard | 800-621-4000 |
| Social Services for Children and Youth | 255-2870 |
| Dauphin County Home & Hospital | 558-1000 |
| (Day, Foster & Long Term Care | |
| TEENLINE | 763-2345/800-722-5385 |

    G.    <u>Housing</u>

| | |
|---|---|
| Bethesda Mission | 257-4440 |
| YWCA Harrisburg Area | 234-7931 |
| YMCA Harrisburg Area | 232-9622 |

5.    The Dauphin County Human Services Handbook characterizes the work of each of
The agencies involved as well as identifying key members.

6.    In the event that additional information is needed relative to any County Agency, the
Reader may contact:  Public Information Coordinator, Human Services Director's Office,
25 South Front Street, Harrisburg, Penna.  17101-2025 or by calling (717) 255-2743.