## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY TRENT ROBERTS, | : | Civil No. 1:21-CV-1140 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID LAU, Detective, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is the second motion to dismiss filed by Defendant City of Harrisburg ("City"). (Doc. 59.) City argues that Plaintiff Larry Trent Roberts ("Roberts") has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because the amended complaint contains only conclusory allegations of a policy that was the moving force behind the violations of his constitutional rights. For the reasons that follow, the motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the amended complaint, Plaintiff, Larry Trent Roberts ("Roberts"), "was unjustly targeted, arrested, and convicted for a crime he did not commit[,]" which resulted in him serving 13 years of a life sentence before he was acquitted in 2019. (Doc. 54, ¶¶ 1, 9.) Specifically, Roberts claims that he was unjustly convicted for the murder of Duwan Stern in 2005. (*Id.* ¶¶ 9, 13.) Roberts alleges, inter alia, that in order to secure his charges, Defendant David Lau

("Lau"), a detective with the Harrisburg City Police Department, maliciously and intentionally "misrepresented facts, included fabricated evidence, and recklessly omitted exculpatory evidence" in the affidavit of probable cause. (*Id.* ¶¶ 113–12.) Roberts further alleges that, in order to secure a conviction, Lau and Assistant District Attorney John Baer ("Baer") conspired to fabricate evidence against him during the investigation and prosecution of this criminal case. (*Id.* ¶¶ 121–125.) Roberts asserts that Lau and Baer fabricated evidence by "[k]nowingly influencing, enticing, and coercing an inculpatory statement from Layton Potter: a jailhouse snitch, who lacked any credibility, whose statement could not be corroborated, and was only concerned with benefiting himself." (*Id.* ¶ 122.) Roberts also contends that Lau withheld information regarding his (Lau's) personal animus towards Roberts and his improper actions during the investigation. (*Id.* ¶ 127.) Finally, Roberts contends that the City of Harrisburg failed to maintain any policy or training regarding the information required for an affidavit of probable cause, which was the moving force behind the deprivation of Roberts' constitutional rights. (*Id.* ¶¶ 1.)

On the allegation against City of Harrisburg specifically, Roberts alleges that the City of Harrisburg Police Department does not have a policy instructing "detectives that relevant information must be included in affidavits of probable cause, even if it is exculpatory[,]" and the Police Department also "does not have a

policy which informs detectives that, when creating affidavits of probable cause, they may not withhold facts that a reasonable person would know is the kind of thing the judge would wish to know when determining probable cause." (*Id.* ¶¶ 64, 65.) Roberts also alleges that the Police Department provides no training regarding the appropriate information to include in an affidavit of probable cause and does not conduct any audits to determine whether detectives are appropriately preparing affidavits of probable cause. (*Id.* ¶¶ 67–72.) In support of these allegations, Roberts attaches a Harrisburg City Police Department training manual from 2014 and 2020, and a response to a Right to Know Law request denying a request for records of an audit because, among other reasons, the records do not exist. (*Id.* ¶¶ 66, 69, 72; Docs. 54-1, 54-2, 54-3.)

On the basis of these facts, Roberts filed a six-count complaint on June 28, 2021, alleging claims for fabrication of evidence, conspiracy to violate civil rights, and municipal liability as to Baer and the City of Harrisburg, and claims for malicious prosecution under state and federal law, fabrication of evidence, withholding of exculpatory material, and conspiracy to violate civil rights against Lau. (*Id.*) Both Baer and the City filed motions to dismiss, which were fully briefed. (Docs. 27, 28, 33, 34, 35, 38, 37, 40.) On July 11, 2022, the court denied Baer's motion to dismiss on prosecutorial immunity grounds, but granted the City's motion to dismiss because Roberts only provided conclusory recitals of the

elements of his *Monell* claim.  (Doc. 49.)  Roberts was granted leave to file an amended complaint.  (Doc. 50.)

On July 21, 2022, Baer filed a notice of appeal from the court's decision denying his motion to dismiss.  (Doc. 51.)  Thereafter, on August 2, 2022, Roberts filed the operative amended complaint.  (Doc. 54.)  The amended complaint added details regarding the City's policies, and raised one count of malicious prosecution in violation of 42 U.S.C. § 1983 against Lau, one count of fabrication of evidence in violation of the Fourteenth Amendment under § 1983 against Lau and Baer, one count of withholding exculpatory material in violation of the Fourteenth Amendment under § 1983 against Lau, one count of civil rights conspiracy in violation of the Fourth and Fourteen Amendment against Lau and Baer, one count of municipal liability under § 1983 against City of Harrisburg, and one state law malicious prosecution claim against Lau.  (*Id.* ¶¶ 113-50.)[1]

The City filed the instant motion to dismiss on August 16, 2022, and a brief in support on August 29, 2022.  (Docs. 59, 62.)  In the meantime, however, after input from the parties, the court decided to stay the case pending the outcome of Baer's appeal.  (Doc. 63.)  The Third Circuit affirmed the court's decision denying Baer's motion to dismiss on January 11, 2024.  (Doc. 66.)  After receipt of the mandate, the court reinstated deadlines, including the briefing schedule for the

---

[1] Lau answered the amended complaint on August 16, 2022.  (Doc. 58.)

City's motion to dismiss.[2]  (Doc. 68.)  Thereafter, Roberts filed a brief in

opposition on February 27, 2024.  (Doc. 70.)  The City filed a reply brief on March

12, 2024.  (Doc. 73.)  Thus, the motion to dismiss is now fully briefed and ripe for

disposition.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts

claims under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.  Venue is appropriate

because all actions detailed in the amended complaint occurred within the Middle

District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

---

[2] Baer answered the amended complaint on March 15, 2024.  (Doc. 74.)

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

In support of its motion to dismiss, the City argues that Roberts has failed to state a claim for *Monell* liability because Roberts has failed to allege any prior instance or knowledge on behalf of the City that its policies "posed any risk to individuals or their constitutional rights, or that there was a pattern of similar instances prior to the present arrest, for which the City had [knowledge] and failed to note." (Doc. 62, p. 7.)[3] City also argues that the two training manuals and the response to the Right to Know Law Request are insufficient to establish prior knowledge because the documents are not from the time period when Roberts was arrested. (*Id.* at 8.) City also argues that Roberts has not alleged any "facts that would make it 'obvious' as a result of allegedly failing to implement policies and/or train its detectives, the City 'knew to a moral certainty' that its detectives would violate constitutional rights." (*Id.* at 9.) City analogizes this case to *Milbrand v. Miner*, wherein a different court in this district found that the plaintiff

---

[3] For ease of reference, the court utilizes the page number contained in the CM/ECF header.

had failed to allege a *Monell* claim against a police department where charges were improperly filed and later dropped.  *Milbrand v. Miner*, No. 4:17-cv-761, 2018 WL 4051747 (M.D. Pa. Aug. 24, 2018).  The court in *Milbrand* held that allegations that a police department failed to train its officers in various categories of pre-charge activities were conclusory recitals of the elements of the claim.  *Id.* at *7. The court further reasoned that the allegations of failure to train regarding probable cause were undercut by plaintiff's allegations that the officers initiated proceedings for personal reasons, despite any lack of probable cause.  *Id.*

In response, Roberts argues that he has sufficiently pleaded factual allegations, not just legal conclusions.  (Doc. 70, p. 6.)  Roberts argues that "[i]n the instant matter, the need to protect the constitutional rights of citizens by establishing a policy and training detectives regarding their obligation to include relevant exculpatory information within Affidavits of Probable Cause was exceedingly obvious."  (*Id.* at 9.)  Roberts argues that "City had an obligation to protect citizens from the known obvious risk of 'zealous officers' who did not grasp their constitutional obligations[,]" and that "City disregarded the risk . . . by failing to establish a policy regarding the inclusion of relevant exculpatory evidence in Affidavits of Probable Cause, failing to train its officers [regarding same, and] failing to conduct audits to determine whether its officers were [constitutionally] creating Affidavits of Probable Cause."  (*Id.*)

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d. 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

A plaintiff can proceed with a § 1983 claim against a municipality in two ways. First, he can allege that a policy or custom caused his injury. Second, he can allege that a failure by the municipality that reflects a "deliberate or conscious choice" caused his injury. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). The Third Circuit has explained that a plaintiff proceeding under a failure or inadequacy theory, such as Roberts, must demonstrate "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Id.* at 106. This requires showing "whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will

8

frequently cause deprivation of constitutional right." *Id.* (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).  A plaintiff proceeding on a "failure or inadequacy theory" need not point to a specific policy because "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liability if it actually causes injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 61, 61 (2011).  Accordingly, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Most commonly, an inadequacy in training or policy amounts to deliberate indifference when there is a pattern of similar violations.  *Id.*  However, deliberate indifference can be shown from a single incident when, considering the "duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been indifferent to the need." *City of Canton*, 489 U.S. at 390.  For example, as explained by the Supreme Court in *City of Canton*, municipal policymakers

> know to a moral certainty that their police officers will be required to
> arrest fleeing felons.  [It] has armed its officers with firearms, in part to

allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.

*Id.* at 390 fn.10.

Additionally, a plaintiff must show causation, demonstrating "a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Ctny., Okl. v. Brown*, 520 U.S. 397, 404 (1997). A direct causal link is established when a plaintiff shows that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* In looking at causation, the focus "must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "Liability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury.'" *Thomas v. Cumberland Cnty.*, 749 F.3d. 217, 226 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.,* 946 F.2d 1017, 1029–30 (3d Cir. 1991)).

Here, Roberts has provided sufficient factual allegations to state a claim at this stage, without the benefit of discovery. Roberts alleged that the need for a policy regarding the preparation of affidavits of probable cause is obvious, and there is a risk of constitutional violations when a detective creates an affidavit of probable cause. (Doc. 54, ¶¶ 139, 140.) While this is a single-incident theory, it is

obvious that detectives run a high risk of violating an individual's constitutional rights when drafting affidavits of probable cause, which initiate criminal proceedings against an individual, such that failing to train officers in what to include in an affidavit of probable cause poses such an obvious risk that it could be considered deliberate indifference.  Roberts also alleged that the police department does not have a policy or training which "instructs detectives that relevant information must be included in affidavits of probable cause, even if it is exculpatory[,]" or "informs detectives that, when creating affidavits of probable cause, they may not withhold facts that a reasonable person would know is the kind of thing the judge would wish to know when determining probable cause." (*Id.* ¶¶ 64–68.)  Roberts then alleges that these failures were the moving force behind the deprivations of his constitutional rights.  (*Id.* ¶142.)[4]  Further, this case is distinguishable from *Milbrand* because Roberts has alleged specific failures in the department's training program that resulted in his alleged injury, not mere recitals of the elements of the claim, as the plaintiff did in *Milbrand*.  *Milbrand*, 2018 WL 4051747 at *7.  Accordingly, Roberts has pleaded sufficient facts to state a *Monell* claim against City of Harrisburg, and the motion to dismiss will be denied.

---

[4] Roberts brings claims of Fourth Amendment malicious prosecution and Fourteenth Amendment fabrication and withholding exculpatory evidence.  (Doc. 54, ¶¶ 113–35.)  City does not argue that Roberts has not suffered a constitutional injury.

**CONCLUSION**

The motion to dismiss filed by City will be denied.  An appropriate Order

follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:  April 1, 2024